**Affirmed and Memorandum Opinion filed June 25, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-01046-CR

**STEVEN JAMES SEBRING, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 1323534**

## M E M O R A N D U M   O P I N I O N

In five issues, appellant, Steven James Sebring, appeals his murder conviction, contending: the trial court erred by admitting certain evidence; the evidence is legally insufficient to support the conviction and the finding against appellant on self-defense; and the evidence is factually insufficient to support the finding that appellant did not act under the influence of sudden passion. We affirm.

# I. BACKGROUND

In the early morning hours of October 14, 2011, Joshua Durrance, Benjamin Vasquez, and Drew Wiese were driving in Vasquez's car looking to buy marijuana. They encountered Chase Laird at a fast-food restaurant, and Durrance asked Laird if he knew anybody from whom Durrance could purchase marijuana. Laird said he knew somebody who would probably make the sale. The parties exchanged telephone numbers and left.

Laird called appellant, who agreed to sell Durrance "an eighth" of marijuana, or 3.5 grams, for $55. Laird then called Durrance, and Durrance's group picked up Laird, who directed them to appellant's house. Vasquez parked his car in front of appellant's house, and Laird walked up to the house to meet appellant. Durrance, Vasquez, and Weise remained in the car.

Before he went outside, appellant tucked a .380-caliber pistol into the waistband of his pants. Laird told appellant that Durrance wanted to weigh the marijuana, so appellant and Laird walked out to the car. Appellant went to the front passenger side of the vehicle where Durrance was sitting and passed Durrance the 3.5 grams of marijuana through the open window.

Durrance weighed the marijuana on a scale he had brought. Durrance asked appellant how much the marijuana cost, and appellant reiterated that it was $55 for 3.5 grams. Durrance then broke apart the marijuana, weighed out 2 grams, and said, "This is 2 grams. Give this to me for $30." At the same time, Durrance handed 1.5 grams of marijuana back to appellant along with $30. Appellant angrily responded "I can't do that" and insisted that Durrance either pay $55 for the full 3.5 grams or return all of the marijuana and keep his money.

There is dispute over the exact exchange that followed, but the jury heard testimony that Durrance replied, "Well, what the fuck are you going to do about it?" and that appellant then asked Durrance, "Are you serious?" and "Are you sure you want it that way?" several times. Appellant and Laird testified that Durrance then said "pistola" ("pistol" in Spanish) to Vasquez and leaned over to reach under the seat. In contrast, Vasquez testified that he never heard Durrance say "pistola," and Wiese testified that Durrance never said anything in the car about a gun or spoke to anybody in the car in Spanish. Moreover, neither appellant nor any other witness testified that they ever saw a handgun, and no handgun was ever recovered other than the handgun used by appellant.

In any event, appellant then undisputedly stepped back from the vehicle, drew his pistol, worked the action to chamber a round, and fired into the open window at close range several times. As appellant ran around the front of the car toward his house, he fired two more times into the windshield.

Durrance was shot four times, and Vasquez was shot once. Vasquez managed to drive the car to a nearby hospital[1] where Durrance was pronounced dead. Vasquez was admitted to the hospital for treatment and survived his single gunshot wound to the chest.

Upon returning to his house, appellant proceeded upstairs to his room and smoked marijuana. Approximately an hour after the shooting, appellant took some Seroquel prescription medication and got into his bed. At no point did appellant wake his mother—who owned the house and was home asleep—or call the police.

---

[1] When the shooting began, Laird ran away from the vehicle and hid behind a neighboring house. Vasquez drove away in the vehicle with Durrance and Wiese and left Laird at the scene.

Upon learning of the shooting, several police officers assembled around appellant's house to secure the location. The officers maintained a perimeter at the scene for approximately two hours until they were instructed by their commanding officers around 4:15 a.m to attempt contact with someone in the house. The officers knocked on the front door. According to the officers, appellant's mother answered, gave them permission to enter, and directed them to appellant's room.

The police proceeded upstairs to appellant's room, which was locked. The officers knocked on the door, received no response, and kicked in the door. The officers found appellant lying in his bed. In the process of arresting appellant, they found appellant's pistol under his pillow.

The officers took appellant to the police station and conducted a recorded interview, wherein appellant confessed to shooting Durrance multiple times. Appellant was subsequently charged with murder.

Appellant filed a pre-trial motion to suppress certain evidence. A hearing was held on the motion. The trial court denied the motion relative to the firearm found in appellant's bedroom and his confession. After considering the testimony of several witnesses and independently reviewing appellant's videotaped confession, the trial court found:

> I'm going to find that there were exigent circumstances to go into the house, along with the consent of the mom to enter the house to speak with the son where they found him. And I find that they had the right to go into the room and they did have the information to question him.
>
> And I'm going to allow his statement. After reviewing his statement, I find that 38.23 [sic][2] was complied with. And that after reviewing the statement, I also find that [appellant] appeared very

---

[2] We presume the trial court meant article 38.22 of the Texas Code of Criminal Procedure, which pertains to the admissibility of statements made by the accused. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West, Westlaw through 2015 R.S.).

4

cohesive [sic] and appeared to be awake. He didn't have any problems with responding to any of the officers' questions. He did mention that he had taken Seroquel. And the jury can give that whatever weight they want to, but I do not find that he appeared to be unable to comprehend what was going on or unable to answer any of the questions, and that he did so voluntar[ily] after being advised of his warnings. So, I will allow in the statement that he provided that evening.

After trial, the trial court reiterated its ruling in findings of fact, conclusions of law, and an order regarding the voluntariness of appellant's statement, as follows:

> In light of the totality of the circumstances, including the testimony and arguments proffered by the State and the Defense on the issue of Defendant's intoxication, and this Court's independent assessment of State's Exhibit 1, [the interrogating officer]'s recorded interview with Defendant, this Court concurs with [the interrogating officer] and concludes that if Defendant was still under the influence of the Seroquel that Defendant reported ingesting at 3:00 AM, approximately three hours before the interview, Defendant was not so intoxicated at the time of his statement that he could not understand his *Miranda* and statutory rights; make an independent, informed, and volitional decision to waive his rights; and make a free and voluntary decision to provide a statement to [the interrogating officer].

The trial court allowed admission of the handgun on the ground that it was in plain view when the officers arrested appellant. The trial court granted appellant's motion to suppress as to all other evidence found in appellant's room after appellant was secured, concluding that the police had not obtained a warrant to seize such items and there were no longer any exigent circumstances justifying seizure once appellant was in custody.

A jury found appellant guilty and assessed punishment at 60 years imprisonment.

## II. SUFFICIENCY OF THE EVIDENCE

We first address appellant's third and fourth issues, contending that the evidence is insufficient to support his conviction and the jury's finding against appellant on the issue of self-defense.

### A. Standard of review

When reviewing sufficiency of the evidence, we view all evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). We do not sit as the thirteenth juror and may not substitute our judgment for that of the fact finder by re-evaluating weight and credibility of evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's responsibility to fairly resolve conflicts in testimony, weigh the evidence, and draw all reasonable inferences from basic facts to ultimate facts. *Id.* Our duty as the reviewing court is to ensure the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

### B. Sufficiency of the evidence supporting conviction

As charged in the present case, a person commits murder if he "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." Tex. Penal Code Ann. § 19.02(b)(1), (2) (West, Westlaw through 2015 R.S.). The offense is a felony of the first degree. *Id* § 19.02(c) (West, Westlaw through 2015 R.S.).

6

Appellant contends the evidence is insufficient to establish that appellant intentionally and knowingly caused Durrance's death, or that appellant intended to cause serious bodily injury to Durrance and caused his death by intentionally and knowingly committing an act clearly dangerous to human life.

The jury heard testimony that appellant and Durrance were arguing, appellant asked Durrance "Are you sure you want it that way?" three or four times, and appellant then took several steps back, drew his pistol, and started firing. The jury viewed appellant's videotaped statement, in which he admitted that the pistol did not have a round in the chamber and he had to work the action on the pistol to chamber a round before he shot Durrance. The jury also heard testimony that appellant continued to fire into the windshield as he ran around the front of the car.

Viewing the evidence in the light most favorable to the verdict, we conclude any rational fact finder could have found appellant guilty of murder beyond a reasonable doubt under either section 19.02(b)(1) or 19.02(b)(2) of the Penal Code. *See id.* § 19.02(b)(1), (2); *see also Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012) (recognizing that specific intent to kill may be inferred from defendant shooting victim with a deadly weapon); *Forest v. State*, 989 S.W.2d 365, 368 (Tex. Crim. App. 1999) ("[F]iring a gun in the direction of an individual is an act clearly dangerous to human life."); *Womble v. State*, 618 S.W.2d 59, 64 (Tex. Crim. App. 1981) ("[W]here a deadly weapon is fired at close range and death results the law presumes an intent to kill."); *Draper v. State*, 335 S.W.3d 412, 415 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (holding jury was entitled to infer intent to kill from defendant using a deadly weapon—a firearm—at close range to shoot and kill the victim). We overrule appellant's third issue.

## C. Sufficiency of evidence that appellant did not act in self-defense

The jury was instructed on the law of self-defense as it applies to a defendant's use of deadly force against another. *See* Tex. Penal Code Ann. §§ 9.31, 9.32 (West, Westlaw through 2015 R.S.). A person is justified in using deadly force against another (1) if he would be justified in using force against the other under section 9.31 of the Texas Penal Code, and (2) when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a)(1), (a)(2)(A). Section 9.31 of the Penal Code identifies certain circumstances when the use of force is not permitted, including that the use of force is not justified in response to verbal provocation alone. *Id.* § 9.31(b)(1).

Once a defendant produces some evidence of self-defense, the burden shifts to the State to disprove the defense. *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). The State is not required to produce evidence to refute the self-defense claim, but rather is only required to prove its case beyond a reasonable doubt. *Id.* Whether a defendant acted in self-defense is an issue of fact to be determined by the jury. *Id.* at 914. A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory. *Id.*

Much of the same evidence that supports the jury's finding that appellant was guilty of murder also supports the finding against appellant on the issue of self-defense. The jury viewed appellant's videotaped statement. In the statement, when asked if appellant was scared or intimidated by Durrance, appellant responded that he was not scared because he had his gun with him, and later reiterated "I'm never scared when I have my pistol on me." Appellant also stated that he did not see that anybody in the car had a gun before he started shooting. Likewise, no witnesses ever saw any weapon in the car. Moreover, witness

8

testimony established—and appellant's statement confirmed—that Durrance never opened his car door or made any motion to get out of the car.

The jury was free to reject—and by its guilty finding, implicitly did reject—the conflicting evidence that Durrance threatened to fight appellant and that Durrance said "pistola" to Vasquez and allegedly then reached under the seat. *See id.* Accordingly, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have rejected appellant's claim of self-defense. We overrule appellant's fourth issue.

### III. MOTION TO SUPPRESS

In his first and second issues, appellant contends that the trial court erred by denying his motion to suppress the firearm used by appellant to commit the murder and appellant's videotaped confession.

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total deference to the trial court's determination of historical facts. *Id.* The trial court is the sole factfinder and judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* Regardless of whether we are reviewing the trial court's express or implied findings, we must view the evidence in the light most favorable to the trial court's ruling to determine whether the evidence supports these findings. *See id.*

Second, we review *de novo* a trial court's application of the law to the facts. *Id.* We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* at 447–48. A trial court does not abuse its discretion by denying a motion to suppress unless that

decision lies outside the "zone of reasonable disagreement." *Martinez v. State*, 358 S.W.3d 919, 922 (Tex. Crim. App. 2011).

## A.    Admissibility of the firearm

Appellant contends that the trial court erred by admitting appellant's firearm because it was obtained as a result of a warrantless illegal search.

### 1.    Searches and seizures pursuant to a valid, warrantless arrest

Article 14.03(a) of the Texas Code of Criminal Procedure provides that a police officer may arrest, without warrant, "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony . . . ." Tex. Code Crim. Proc. Ann. art. 14.03(a)(1) (West, Westlaw through 2015 R.S.). An officer justified in making a warrantless arrest under article 14.03(a)(1) "is justified in adopting all the measures which he might adopt in cases of arrest under warrant, except that an officer making an arrest without a warrant may not enter a residence to make an arrest unless: (1) a person who resides in the residence consents to the entry; or (2) exigent circumstances require that the officer making the arrest enter the residence without the consent of a resident or without a warrant." *Id.* art. 14.05 (West, Westlaw through 2015 R.S.). Accordingly, in order to justify a warrantless arrest inside a person's residence under these statutes, the State must show that the police had probable cause to arrest the suspect, that the residence was a "suspicious place," and that the police either had consent to enter the residence or that exigent circumstances existed justifying the entry. *See id.* art. 14.03(a)(1), 14.05; *see also Banda v. State*, 317 S.W.3d 903, 912 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("For a warrantless arrest to be justified under article 14.03(a)(1), the totality of the circumstances must show (1) the existence of probable cause that the defendant committed a crime and (2) the defendant must be found in a suspicious place.").

Moreover, under the Fourth Amendment, police officers may search an arrestee incident to a lawful arrest in order to prevent the arrestee from accessing or using a weapon to assault the officers or to effect an escape. *Chimel v. California*, 395 U.S. 752, 763 (1969); *State v. Granville*, 423 S.W.3d 399, 410 (Tex. Crim. App. 2014). A search incident to arrest must be "substantially contemporaneous" with the arrest and is limited to a search of the arrestee's person and the area within his immediate reach or control. *Chimel*, 395 U.S. at 763; *Granville*, 423 S.W.3d at 410.

### 2. Probable cause

Probable cause for a warrantless arrest exists where, at that moment, the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information would warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

Here, police received 911 calls from appellant's neighbors reporting the shooting outside of appellant's residence, and Vasquez and Wiese gave statements to the police while at the hospital describing the events of the shooting. Reviewing the evidence in the light most favorable to the trial court's ruling, we conclude that probable cause existed for appellant's warrantless arrest.

### 3. "Suspicious place"

Few places, if any, are inherently suspicious. *Dyar v. State*, 125 S.W.3d 460, 464–65 (Tex. Crim. App. 2003). The determination of whether a place is suspicious requires a highly fact-specific analysis. *Id.* at 468. Any place may become a "suspicious place" when an individual at the location and the accompanying circumstances raise a reasonable belief that the individual

11

committed a crime and exigent circumstances call for immediate action or detention by the police. *Swain v. State*, 181 S.W.3d 359, 366 (Tex. Crim. App. 2005); *see also Gallups v. State*, 151 S.W.3d 196, 202 (Tex. Crim. App. 2004) (holding that defendant's home became a "suspicious place" after defendant wrecked his vehicle while intoxicated and walked back to his home); *Goldberg v. State*, 95 S.W.3d 345, 363 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) ("A place can be suspicious because: (1) an eyewitness or police officer connected the place to the crime; (2) a crime occurred there or the police reasonably believed a crime occurred there; (3) specific evidence directly connected the defendant or the place with the crime; or (4) appellant's behavior was a factor in determining whether a place was suspicious.").

In this case, witness statements to the police identified the address as the scene of a crime. Witness statements connected appellant with the address and suggested he retreated into the residence after the shooting. Moreover, upon arriving at the scene, police found two .380 shell casings on the street in front of the house. Reviewing the totality of the circumstances, we conclude that appellant's residence was a "suspicious place" for purposes of article 14.03(a)(1).

### 4. Consent/Exigent circumstances

As stated above, an officer making an arrest without a warrant may not enter a residence to make an arrest unless: (1) a person who resides in the residence consents to the entry; or (2) exigent circumstances require that the officer making the arrest enter the residence without the consent of a resident or without a warrant." Tex. Code Crim. Proc. Ann. art. 14.05. Exigent circumstances that justify a warrantless intrusion by police officers include: (1) providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; (2) protecting police officers from persons whom they reasonably

believe to be present, armed, and dangerous; and (3) preventing the destruction of evidence or contraband. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007).

The trial court heard testimony from one of the arresting officers that appellant's mother gave the officers permission to enter the home and speak with appellant. The trial court heard contradictory testimony from appellant's mother that the officers pushed past her to enter the home after she told them she believed appellant was upstairs. Viewing the evidence in the light most favorable to the trial court's ruling, the trial court did not abuse its discretion by determining that appellant's mother—a resident of the home—consented to the police officers' entry to the home.

Moreover, even if the mother had not consented, we would still conclude, as the trial court did, that exigent circumstances existed which justified the officers' entry into the home to arrest appellant. The police believed that appellant had very recently shot and killed Durrance and retreated into his residence—likely with his firearm. Thus, the police could have reasonably believed it necessary to enter the home and secure appellant so as to protect the officers on scene, appellant's neighbors, and anyone else in the home, as well as to prevent appellant from destroying any evidence. *See, e.g.*, *Waddy v. State*, 880 S.W.2d 458, 460 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (noting that "[a]nytime a person has possession of a firearm, the threat to the public safety remains, regardless of whether the possessor has sought shelter or, in other words, won the footrace to the protection of a building."). Accordingly, we conclude that both consent and exigent circumstances justified the officers' entry into appellant's residence and bedroom.

## 5. Appellant's firearm was properly seized

As discussed above, we have concluded that the officers had probable cause to enter appellant's home and both consent and exigent circumstances justified their entry. Therefore, the officer's warrantless arrest of appellant was valid. *See* Tex. Code Crim. Proc. Ann. arts. 14.03(a)(1), 14.05. Because the arrest was valid, the officers were justified in searching appellant and the area within his immediate reach or control in order to prevent appellant from accessing or using a weapon to assault the officers or to affect an escape. *See Chimel*, 395 U.S. at 763; *Granville*, 423 S.W.3d at 410.

At the suppression hearing, the trial court heard testimony that when the officers entered appellant's room, appellant was lying on his bed. During the course of taking appellant into custody, one of the officers noticed the pistol "under the pillow right next to [appellant]." Viewing the evidence in the light most favorable to the trial court's findings, we conclude that appellant's handgun was properly seized pursuant to a search incident to a valid warrantless arrest. *See Chimel*, 395 U.S. at 763 ("A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."); *Granville*, 423 S.W.3d at 410.

Accordingly, the trial court did not err by denying appellant's motion to suppress the handgun. *See Valtierra*, 310 S.W.3d at 447–48. We overrule appellant's first issue.

**B.      Admissibility of appellant's videotaped confession**

In his second issue, appellant contends that the trial court erred by admitting appellant's videotaped confession because he was under the influence of "sleep medication" during his interrogation and thus, the statement was involuntary.

**1.      Voluntariness of a statement**

Under Article 38.21 of the Texas Code of Criminal Procedure, "A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion[.]"   Tex. Code Crim. Proc. Ann. art. 38.21 (West, Westlaw through 2015 R.S.).   Whether a statement is voluntarily is a mixed question of law and fact, but because it turns on an evaluation of credibility and demeanor, we afford almost total deference to the trial court's ruling.  *Garcia v. State*, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000). The trial court is the "sole and exclusive trier of fact and judge of the credibility of the witnesses," particularly when the voluntariness of a confession is at issue. *Delao v. State*, 231 S.W.3d 235, 238 (Tex. (Tex. Crim. App. 2007).   We accord great deferent to the trial court's decision to admit or exclude evidence.  *Id*.

The fact that a suspect was on medication at the time of his statement can raise a claim of involuntariness regarding his statement.  *Oursbourn v. State*, 259 S.W.3d 159, 172 (Tex. Crim. App. 2008).  The effect of a defendant's intoxication on the voluntariness of his statement provides an analogous situation. "[I]ntoxication, while relevant, does not render a confession involuntary *per se*." *Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996); *Gregory v. State*, 56 S.W.3d 164, 175 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd) (same). Instead, the question is whether the defendant's intoxication rendered him incapable of making an independent, informed decision to confess.  *Jones*, 944 S.W.2d at 651; *Gregory*, 56 S.W.3d at 175.

15

## 2.    Appellant's statement was voluntary

Pursuant to Article 38.22, Section 6, the trial court held a pretrial hearing outside the presence of the jury to assess the voluntariness of appellant's confession. *See* Tex. Code Crim. Proc. Ann. art. 38.22 § 6 (West, Westlaw through 2015 R.S.). At the hearing, appellant argued that his statement was involuntary because he was under the influence of Seroquel, a prescribed sleep medication, which he ingested after the shooting.

The officer who took appellant's statement testified that appellant was "quiet, coherent, alert, and he spoke as a matter of fact." The officer testified that appellant said he had taken some sleeping medication. However, the officer testified that, based on his observation, the medication "was not affecting [appellant's] reasoning because he was very, like I say, clear and alert and he answered the questions that I [asked]." The officer based his conclusion on his experience as a police officer and on having conducted hundreds of interviews with suspects, including some who were under the influence. The officer testified that appellant "did not seem in any way impaired," and he appeared to have the normal use of his mental and physical faculties, and the officer believed appellant's confession was voluntary.

We conclude the evidence supports the trial court's finding that appellant's use of sleep medication did not render his statement involuntary. *See, e.g.*, *Jones*, 944 S.W.2d at 651 (holding that, where appellant's statement to arresting officer that he "was too drunk to understand" was countered by testimony of two officers that appellant did not appear to be intoxicated, the trial court did not err in denying motion to suppress).

Therefore, we hold that the trial court did not err by denying appellant's motion to suppress his confession. We overrule appellant's second issue.

16

## IV. SUDDEN PASSION

In his fifth issue, appellant challenges the factual sufficiency of the evidence supporting the jury's negative finding on the special issue regarding sudden passion.

### A.    Standard of review

At the punishment stage of a murder trial, "the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause." Tex. Penal Code Ann. § 19.02(d) (West, Westlaw through 2015 R.S.). "Sudden passion" means "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2) (West, Westlaw through 2015 R.S.). "Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1) (West, Westlaw through 2015 R.S.). If the defendant proves the issue by a preponderance of the evidence, the offense is reduced to a second degree felony. *Id.* § 19.02(d).

In the factual-sufficiency review of a rejected affirmative defense or similar plea which the defendant must prove by a preponderance of the evidence, we view the entirety of the evidence in a neutral light, but we may not usurp the function of the jury by substituting our judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony. *Matlock v. State*, 392 S.W.3d 662, 671 (Tex. Crim. App. 2013). We consider all the evidence relevant to the issue and determine whether the finding is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *See Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990).

17

The Court of Criminal Appeals and this court have applied this standard in reviewing the factual sufficiency of findings on punishment issues that the defendant must prove by a preponderance of the evidence. *See Neal v. State*, 256 S.W.3d 264, 273 (Tex. Crim. App. 2008) (applying *Meraz* standard in reviewing factual sufficiency of jury's punishment-phase negative finding on special issue of defendant's mental retardation); *Bernard v. State*, 401 S.W.3d 145, 147–50 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (applying *Meraz* standard in reviewing factual sufficiency of jury's punishment-phase finding that defendant did not act under the immediate influence of sudden passion). Accordingly, we will review the evidence under the *Meraz* standard.

**B.    Sufficiency of evidence that appellant did not act under the influence of sudden passion.**

Appellant contends that Durrance's actions provoked appellant to shoot Durrance. Specifically, appellant argues that Durrance initiated the conflict by refusing to pay appellant's asking price for the marijuana once Durrance had it in hand and instead demanding different terms. Appellant contends that Durrance then aggravated the situation by threatening appellant and challenging appellant to fight. Appellant contends that when Durrance allegedly said the word "pistola" and reached under the seat, appellant was unable to coolly reflect upon the situation and acted under the immediate influence of sudden passion when he shot Durrance.

The jury heard testimony supporting appellant's argument, as detailed above, and testimony that when appellant and Durrance were arguing, appellant became mad and started yelling at Durrance. However, the jury also heard evidence contradicting that appellant acted under the influence of sudden passion. The jury heard testimony that Durrance and appellant were arguing over the marijuana deal, but that no threats were made and Durrance never said anything

18

about fighting appellant. The jury viewed appellant's videotaped statement in which he stated that he was not scared. The jury also heard testimony that Durrance never said "pistola," never told appellant that he had a gun or showed appellant a gun, and never moved to exit the vehicle.

The jury is the sole judge of the weight and credibility of the witnesses' testimony on a defensive issue. *Bernard*, 401 S.W.3d at 149. The jury here found that appellant did not prove by a preponderance of the evidence that he caused Durrance's death under the immediate influence of sudden passion arising from an adequate cause. After considering all the evidence relevant to this issue in a neutral light, we cannot conclude that the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. We overrule appellant's fifth issue.

Having rejected all of appellant's issues, we affirm the trial court's judgment.

/s/ John Donovan
Justice

Panel consists of Justices Christopher, Donovan, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b)