PD-0921-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/26/2015 5:07:07 PM
Accepted 8/28/2015 11:54:35 AM
ABEL ACOSTA
CLERK

PD-0921-15

IN THE TEXAS COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

STEVEN JAMES SEBRING
Defendant - Appellant

VS.

THE STATE OF TEXAS
Plaintiff - Appellee

# Appellant's Petition for Discretionary Review

On Petition for Discretionary Review from the Fourteenth Court of Appeals
No: 14-13-01046-CR

337th District Court
Cause Number: 1323534

THOMAS M. HENDERSON
Texas Bar No: 09432000
4615 Southwest Freeway, Suite 600
Houston, Texas 77027
Tel: (713) 552-1940  Fax: (713) 626-0182
thend1283@aol.com

Oral argument is not requested

FILED IN
COURT OF CRIMINAL APPEALS

August 28, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF PARTIES AND COUNSEL

Steven James Sebring - Defendant/Appellant

**Attorneys for the State at Trial**
Sarah Mickelson
SBOT: 24064244
Adam Muldrow
SBOT: 24060307
1201 Franklin, Ste. 600
Houston, Texas 77002

**Attorneys for Appellant at Trial**
Te ' Iva Bell
SBOT: 24048575
Tanya L. Terry
SBOT: 24073249
Harris County Public Defender's Office
1201 Franklin, 13th Floor
Houston, Texas 77002

**Appellate Attorneys**

Harris County District Attorney's Office
Appellate Division
1201 Franklin, Suite 600
Houston, Texas 77002

Thomas M. Henderson
4615 Southwest Freeway, Suite 600
Houston, Texas 77027
Attorney for Appellant

**Trial Judge**

Honorable Renee Magee
337th District Court
Harris County Criminal Justice Center
1201 Franklin Street, 17th Floor
Houston, Texas 77002

i

# TABLE OF CONTENTS

Identity of Parties and Counsel      i

Table of Contents      ii

Index of Authorities      iii

Statement Regarding Oral Argument      iv

Statement of the Case      iv

Statement of Procedural History      iv

Reasons for Granting Review      v

Appellant's First Proposed Issue for Review      1

Appellant's Second Proposed Issue for Review      9

Prayer for Relief      12

Certificate of Service      13

Word Count Compliance      13

Appendix -    Opinion from Fourteenth Court of Appeals

# INDEX OF AUTHORITIES

Fourth Amendment   7,8

Texas Penal Code 19.02(2)(d)   10

Tex. Code Crim. Proc. 14.05   4,6

Becknell v. State   4,5
Brigham City v. Stuart   7
Cleveland v. State   11
Correa v. State   8
Davis v. State   11
Gutierrez v. State   4
Hernandez v. State   10
llinois v. Rodriguez   3
Illinois v. Wardlow   8
Kentucky v. King   6
McGee v. State   6
McKinney v. State   10,12
McNairy v. State   4
Meraz v. State   11
Turrubiate v. State   4
United States v. Munoz-Guerra   7
Zuniga v. State   11

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.

## STATEMENT OF THE CASE

Appellant was tried for murder in the shooting death of Joshua Durrance during a drug (marijuana) transaction. Several hours after having Appellant's home under surveillance (after the shooting) police entered Appellant's home without a warrant, broke through Appellant's locked bedroom door , and arrested him. A handgun was recovered under Appellant's pillow. The trial court overruled Appellant's pre-trial motion to suppress this evidence. The jury found Appellant guilty of murder as alleged in the indictment. The jury found Appellant guilty of murder and set his punishment at sixty (60) years in prison.

## STATEMENT OF PROCEDURAL HISTORY

Appellant appealed to the Fourteenth Court of Appeals. On June 25, 2015, the Fourteenth Court of Appeals issued its Opinion affirming Appellant's conviction

A copy of the Opinion is attached as Appendix "A"

This Court granted Appellant's Motion for Extension of Time to File Petition for Discretionary Review until August 26, 2015.

# REASONS FOR GRANTING REVIEW

**1. The court of appeals decision conflicts with the decision of another court of appeals on the same issue.**

**2. The court of appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States.**

**3. The court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision.**

In affirming Appellant's conviction, the Fourteenth Court of Appeals conceded that even if an officer is justified in making a warrantless arrest, **he may not enter a residence to make an arrest unless:**

(1) a person who resides in the residence **consents** to the entry; **or**

(2) **exigent circumstances** require that the officer making the arrest enter the residence without the consent of a resident or without a warrant. **(Opinion @ 10)**

In affirming Appellant's conviction, the Fourteenth Court of Appeals rejected Appellant's Point of Error regarding "Sudden Passion" finding that the jury's finding was not so against the great weight and preponderance of the evidence as to be manifestly unjust. **(Opinion @ 19)**

## APPELLANT'S FIRST PROPOSED ISSUE FOR REVIEW

**Was law enforcement officer's warrantless entry into a private residence, followed by the non-consensual and forced entry into a locked bedroom occupied by a co-tenant of the home, resulting in a subsequent search and seizure, legally justified where no exigent circumstances were articulated by law enforcement officers who had ample time to secure a warrant?**

## SUPPORT OF APPELLANT'S CLAIM FOR REVIEW

Police did not have any warrant at all when they made entry into Appellant's home.

Harris County Constable Gregory Thomason was dispatched to an address on Crescent Moon Drive on October 14, 2012. (R-III-5) This deputy, along with four others, set up across the street from the location at Crescent Moon Drive. They waited there for a couple of hours until they were instructed to try and make contact at the front door to see if anybody would answer the door. (R-III-6) When this deputy knocked on the front door, he was met by Appellant's mother. (R-III-7) Appellant's mother indicated that Appellant was upstairs asleep in his bedroom. (R-III-7) The deputies proceeded upstairs. (R-III-8) After knocking on the bedroom door and receiving no response, Corporal Garza forced the door open. (R-III-8) Appellant was face-down on his bed. The Deputy found a firearm <u>under the pillow</u> right next to Appellant. (R-III-8) Thomason said that he knew there had been a fatality prior to going to the location on Crescent Moon Drive.(R-III-9) When Thomason was going to the Crescent Moon location he had the impression that it was <u>a possible suspect</u> location. (R-III-9) Thomason went there because he was requested to do so by members of the Harris County Sheriff's Office. (R-III-9) When asked whether the witness was concerned that Appellant would destroy evidence or impair the availability of evidence, he responded *"That's always*

1

*a possibility.*" (R-III-9) He testified that depending on the circumstances permission has to be obtained from a Corporal to enter a residence. (R-III-10) Thomason stated that he believed the Corporal had received permission from a Sergeant to enter with force. (R-III-10) He believed the mother had the ability to consent to the search of the residence. (R-III-10)

Thomason admitted that he was not certain that it was a suspect location-only that it was a possible suspect at that time. (R-III-12) **Thomason acknowledged that officers waited across from the house for approximately two hours before entering the location.** (R-III-12) Thomason could not recall whether he asked Appellant's mother for a key to unlock the door. (R-III-13) He also said it was certainly possible that the mother told officers that it was Appellant's room and she didn't have a key for the door and that it was his space. (R-III-13) Thomason admitted that Appellant's mother did not unlock the door with a key and that at no time did Appellant come and unlock the door for officers before forced entry was made. (R-III-14) The deputies did not have a search warrant for the residence. (R-III-14) As soon as Appellant was taken off the bed, he was in custody. The officer acknowledged that there was no one else in the room at that time. (R-III-14) He reiterated that prior to making entry into the home and kicking in the door to Appellant's room, he did not have a recollection that there was a warrant. (R-III-15) Thomason said he observed <u>a black handgun under the pillow</u> when Appellant was arrested. He attempted to claim that this was not a result of a search even though <u>the handgun was under the pillow</u>. (R-III-16)

Roxanne Sebring woke up at about 4:15 in the morning to a very light tapping on her door frame. (R-III-18) Sebring went downstairs to her front door and saw what appeared to be a SWAT officer in full combat gear. (R-III-18) After retrieving her keys, Sebring opened

2

the front door just a little bit, and the officer stated he was there to talk to her son "Michael." [not Steven] She stated that the officer pretty much pushed past her and went up the stairs. When he asked her which room was her son's, she stated the bedroom to the far side of the house. (R-III-18) The officer went upstairs and came back, stating that the door was locked. (R-III-19) Sebring told the officer that she did not have a key to her 19 year old son's room - that it was his room. (R-III-19) The officer then kicked in the door to Appellant's bedroom. (R-III-19) Sebring did not remember giving permission to the officer to enter Steven's room. She certainly communicated to them that she had no way of getting into the room. (R-III-19)

Sebring testified that she had placed a lock on her bedroom door and that her son had placed a lock on his bedroom door as well. (R-III-20) Sebring testified that she never went into her son's room without getting his permission first. (R-III-21, 22) Sebring reiterated that it was Steven's space and that he was responsible for cleaning it and she did not otherwise go inside. (R-III-22) The information provided to police by Ms. Sebring created an ambiguous circumstance which cast doubt on the effectiveness of the consent claimed by the police. At that point, with no warrant, the police were required to stop and make further inquiries as to the continued effectiveness of the purported consent they relied upon. **Illinois v. Rodriguez, 497 U.S. 177 (1990)**

Appellant submits that this Court's holding in **Becknell v. State, 720 SW2d 525 (Tex. Crim. App. 1986)** is the correct legal standard and thus controlling authority by which this case should have been decided. In ruling as it did, the Court of Appeals applied the wrong legal standard to the facts in the case.

Appellant's mother specifically told the officers that she did not have a key and there

3

was no way to get in and it was Appellant's separate area that the officer ultimately broke into. (R-III-36) Appellant's trial counsel pointed out that there were no exigent circumstances, because the officers waited outside for approximately two hours before entering the home. (R-III-36) Appellant's counsel pointed out two hours was more than enough time for them to obtain a warrant had they sought to do so. (R-III-36) Appellant's counsel asked that the Court suppress the evidence citing the Court to **Becknell** (R-III-37)

No warrant was issued for law enforcement to enter Appellant's house in the instant case (R-IV-14). Pursuant to **Tex. Code Crim. Proc. Art. 14.05**, in the absence of a warrant, in order to properly enter a residence, law enforcement must either have consent to enter, or exigent circumstances must exist to justify a warrantless entry. A warrantless entry into a residence is presumptively unreasonable. **Turrubiate v. State, 399 S.W.3d 147 (Tex. Crim. App. 2013)** citing **Gutierrez v. State, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007)**. When an Appellant moves to suppress evidence based on a warrantless search, the State has the burden of showing that exigent circumstances requiring immediate entry made obtaining a warrant impracticable. **McNairy v. State, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991)**.

In the instant case, Roxanne Sebring, Appellant's mother, testified regarding how entry was made of her residence by the police (R-III-17-19). Ms. Sebring testified that she heard a light tapping on her door at 4:15am, approximately fifteen minutes before she usually woke up, and that she saw a "SWAT officer in full combat gear at [her] front door" (R-III-18). She then opened the front door "just a little" while wearing only "a t-shirt and a pair of panties" (R-III-18). Upon informing the officer that she believed Appellant to be home, the officer "pretty much pushed past her" on his way to locate Appellant (R-III-18). When the officer asked if

4

she had a key to Appellant's room, Ms. Sebring stated, "No, sir, I don't, it's my 19-year-old son and I don't have a key to his room" (R-III-19). In fact, Appellant put the lock on his own door and Ms. Sebring never entered his room without his permission (R-III-20-22). The officer then kicked in Appellant's door (R-III-19). It appears quite clear that Ms. Sebring in no way consented to a search of her house or of Appellant's room, which ultimately resulted in the arrest of Appellant.

The Court of Appeals interpreted Roxanne Sebring's actions as consent to search her house and Appellant's room. This Court resolved a situation similar to Appellant's in **Becknell v. State, 720 S.W.2d 526 (Tex. Crim. App. 1986)**. In **Becknell**, police relied upon the consent of a parent to open a locked bedroom door of that parent's adult progeny living in the house. *Id.* at 528. Because the adult progeny had the only key to the lock and because no other family members were allowed in his room, this Court reasoned that a search of his room based on such consent was improper. *Id.*

While **Becknell** was reversed pursuant to a harmless error analysis, it is clear that this Court determined a warrantless search of a locked bedroom (occupied by adult progeny of the homeowner, when the bedroom was clearly intended to be exclusively used and controlled by said adult progeny) would be improper. **Becknell, 720 S.W.2d at 528.**

Without a warrant, and without proper consent, the only permissible way for officers to enter Appellant's room to search or to conduct a lawful arrest would be due to exigent circumstances. **Tex. Code Crim. Proc. Art. 14.05 (2)**. In the absence of a warrant, it is the State's burden to demonstrate that the search was consensual or due to exigent circumstances. **McGee v. State, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003)**. "Situations creating exigent

5

circumstances usually include factors pointing to some danger to the officer or victims, an increased likelihood of apprehending a suspect, or the possible destruction of evidence." **McNairy v. State, 835 S.W.2d 101, 107 (Tex. Crim. App. 1991).** And police cannot justify a warrantless search on the basis of exigent circumstances of their own making. **Kentucky v. King, 131 S.Ct. 1849 (2011).**

It is apparent that exigent circumstances did not exist to enter Appellant's room without a warrant in the instant case (R-III-3-49). The fact that officers maintained their positions "for a long time – possibly a couple hours" before attempting to knock on the front door demonstrates both that there was no immediate necessity to enter the residence, and that ample time existed to obtain a warrant (R-III-6). Clearly, the concept of exigent circumstances would have authorized immediate and forceful action by the officers, not the casual approach reflected in the record in this case. Upon entering the residence, officers were informed that Appellant was sleeping (R-III-7). Prior to kicking in Appellant's door, officers never even knocked (R-II-15). In fact, upon making entry into Appellant's room, Appellant remained asleep (R-V-152). It is impossible to demonstrate danger to the officer or to the victims when neither were in the same residence as Appellant, pursuant to **McNairy.** Furthermore, with multiple officers surrounding the residence, there is no indication that their likelihood of apprehending Appellant would be in some way diminished had they not entered the residence at that time. Most importantly, when there is a complete lack of articulable facts, such as sounds consistent with Appellant moving within his bedroom, which would indicate any attempt to destroy evidence, it is clear that exigent circumstances did not exist to enter the residence or Appellant's locked bedroom. Had such evidence existed, however, it clearly

6

would have been due to exigent circumstances created by the actions of the police. The State failed to present evidence objectively indicating that anyone was in some form of physical distress. The entry was made in violation of the **Fourth Amendment. Brigham City v. Stuart, 547 U.S. 398 (2006)**

In **United States v. Munoz-Guerra,** police had surrounded a house after receiving a tip that Munoz-Guerra possessed and sold cocaine and marijuana out of said house. **United States v. Munoz-Guerra, 788 F.2d 295 (5th Cir. 1986).** The police knocked on the locked front door and Munoz-Guerra answered, stating that he would have to go to another room to retrieve the key. *Id.* at 297. Believing that he might destroy evidence instead, the police kicked in the door, without a warrant, and discovered drugs inside the house. *Id.* In reasoning that the police created their own exigent circumstances and that their search was unreasonable, the Court pointed out that the house had been surrounded and that escape by Munoz-Guerra would be highly unlikely in light of the police positioning. *Id.* at 298. The court further pointed out that police positions could have been held while obtaining a warrant. *Id.* Likewise, in the instant case, **the police had surrounded Appellant's house and had remained outside for approximately 2 hours before attempting to knock on the front door** (R-III- 6). The State was unable to articulate that obtaining a warrant in the instant case would in some way compromise the ability of the police to arrest Appellant, to conduct a search, or that to do so would result in the destruction of evidence. As such, police entry in the instant case to search and to effectuate the arrest of Appellant was illegal and any such evidence recovered or statements made by Appellant subsequent to his illegal arrest are tainted and inadmissible. The totality of the circumstances present in the instant appeal shows that the

7

forced entry by police was unreasonable pursuant to **Fourth Amendment** standards. **Illinois v. Wardlow, 528 U.S. 119 (2000)** The record does not provide a justification for abandoning the warrant requirement in this case. In this regard, the Court of Appeals misapplied the law to the actual facts developed in the trial court below when it upheld the trial court's ruling on the motion to suppress. **Corea v. State, 52 SW3d 311 (Hou. [1ˢᵗ Dist.] 2001)**

To dispel the notion that exigent circumstances existed in this case, this Court need look no further than officer Thomason's testimony when he said that deputies waited there for a couple hours until they were instructed to try and make contact at the front door to see if anybody would answer the door. (R-III-6)

### APPELLANT'S SECOND PROPOSED ISSUE FOR REVIEW

**Can a negative finding made by a jury on the issue of sudden passion be upheld on appeal where the reviewing court limits its analysis to the lack of fear expressed by the Appellant and does not consider all factors constituting sudden passion arising from an adequate?**

### SUPPORT FOR APPELLANT'S CLAIM FOR REVIEW

The trial court instructed the jury on the issue of "sudden passion." (CR-I-72)

Appellant walked out the front door of his home and toward a car occupied by Joshua Durrance, Durrance's cousin - Benjamin Vasquez, and Drew Wiese.

Appellant thought he was going to conduct a small marihuana sale. The terms of the "deal" had already been agreed upon, or so Appellant thought.

Appellant produced the marihuana for Durrance's inspection. (R-VI-81)

Durrance weighed the marihuana, then unilaterally broke the amount into a smaller quantity and told Appellant he was going to pay less for that amount. (R-VI-81, 86)

8

When Appellant said he would have to buy the amount agreed upon or just cancel the deal, Durrance became aggressive towards Appellant.

Durrance said: *"Well, I didn't come here for nothing. I'm going to get my weed."* (R-VI-85)

Durrance told Appellant: **"Well, me and my homies here, we can- we can squabble this out right now."** (R-VI-85) Durrance also challenged a back seat passenger to fight.

Durrance was treating Appellant like a **"little bitch"**. (R-IV-42)

Durrance's own cousin (Vasquez) was so concerned that he would be carrying a weapon that he asked Durrance if he was "clean" before he entered the car. (R-V-7)

Durrance appeared "barred-out" on Xanex as he argued with Appellant. (R-V-81)

Vasquez tried to calm Durrance down and pleaded with him to pay Appellant so they could leave. (R-V-36; SX # 4)

Durrance then said **"Pistola"** to his cousin, Vasquez. (R-VI-87,89)

Durrance then slouched down over his seat with his seatbelt off and reached under his seat. (R-VI-91)

At this point, Appellant believed that Durrance was reaching for a gun. (R-VI-91)

Due to the way Vasquez had parked his car in front of Appellant's home, Appellant was out in the street with the car blocking his safe return to his home. After Durrance initiated the provocation, Appellant began to shoot as events rapidly unfolded and without time to cooly reflect.

**Section 19.02(2)(d) of the Texas Penal Code** states that at the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate

9

influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

Appellant bears the burden at the punishment phase of trial to prove the issue of sudden passion by a preponderance of the evidence. **Hernandez v. State 127 SW3d 206 (Tex. App. - Hou. [1st Dist.] 2003, pet. ref'd)**

During the punishment phase of trial, a defendant may argue that he caused the death while under the immediate influence of sudden passion arising from an adequate cause. Sudden passion is passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed, which passion arises at the time of the offense and is not solely the result of former provocation. A defendant is entitled to rely upon sudden passion where there is an adequate provocation that a passion or an emotion such as **fear, terror, anger, rage, or resentment** existed, that the homicide occurred while the passion still existed and before there was reasonable opportunity for the passion to cool; and that there was a causal connection between the provocation, the passion, and the homicide. **McKinney v. State, 179 SW3d 565 (Tex. Crim. App. 2005) Sudden passion is proper when the sudden passion was directly caused by and arose out of provocation by the deceased.**

In the instant case the circumstances which Appellant confronted were all a result of actions initiated and pursued by Joshua Durrance. Durrance escalated the situation by confronting Appellant and demanding different terms to a simple, small marihuana sale. He further aggravated the situation by challenging Appellant to a fight with him and his "homies" as well as threatening him in tones that were suggestive of his own mental state marred by

10

what one witness claimed was being "barred out" on Xanax. Everything happened so quickly and when Durrance leaned over and said the word "pistola" coupled with his actions in going to below his seat, Appellant was unable to coolly reflect upon what he had just experienced and what he facing at that moment.

The factual sufficiency standard announced in **Meraz v. State, 785 SW2d 146 (Tex. Crim. App. 1990)** is appropriate for review of issues, such as affirmative defenses, on which the defendant has the burden of proof by a preponderance of the evidence. **Zuniga v. State, 144 SW3d 477 (Tex. Crim. App. 2004),** holding that **Meraz** error was suitable for sufficiency reviews regarding affirmative defenses because the burden of proof on defendant is preponderance of the evidence. Accordingly, the Meraz standard of review applies to the review of negative answer on sudden passion. **Cleveland v. State, 177 SW3d 374 (Tex. App. - Hou. [1st Dist.] 2005, pet. ref'd).** The Court considers whether the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. **Davis v. State, 2011 WL 5026403 (Hou. [1st Dist.] 2011, pet. ref'd)** not designated for publication.

Appellant submits that the Court of Appeals performed an incorrect legal analysis in affirming Appellant's conviction and the jury's rejection of "sudden passion" during the punishment phase of the trial. The Court of Appeals analysis of this point focused on the lack of fear expressed by Appellant to the exclusion of the other factors which warrant a finding of sudden passion. Factors such as fear, **terror, anger, rage, or resentment** are all considered to be adequate cause if the homicide occurred while the passion still existed and there was a causal connection between the provocation, the passion and the homicide. **McKinney v. State, 179 SW3d 565 (Tex. Crim. App. 2005)** A careful review of the factual record from the trial

11

court supports Appellant's claim that the Court of Appeals erred in holding that the evidence was not so against the great weight and preponderance of the evidence as to be manifestly unjust. Appellant, a first-offender, was given a sixty (60) year prison sentence by the jury - it cannot be said that this outcome was not manifestly unjust.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Honorable Court consider the issues raised herein and grant discretionary review, or such other relief, including remand to the Court of Appeals for consideration of issues as this Court deems appropriate.

Respectfully submitted

Thomas M. Henderson
SBOT: 09432000
4615 Southwest Freeway, Suite 600
Houston, Texas 77027
Tel: (713) 552-1940
Fax: (713) 626-0182
tend1283@aol.com
Attorney for Steven Sebring

## CERTIFICATE OF SERVICE & WORD COUNT COMPLIANCE

I hereby certify that a true and correct copy of this Petition for Discretionary Review will be served on all interested parties.

This Petition complies with Rule 9. 4 of the Texas Rules of Appellate Procedure containing 3772 words based on the computer generated program used to prepare this document.

Thomas M. Henderson

# APPENDIX

Affirmed and Memorandum Opinion filed June 25, 2015.



In The

# Fourteenth Court of Appeals

## NO. 14-13-01046-CR

## STEVEN JAMES SEBRING, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 1323534**

## MEMORANDUM OPINION

In five issues, appellant, Steven James Sebring, appeals his murder conviction, contending: the trial court erred by admitting certain evidence; the evidence is legally insufficient to support the conviction and the finding against appellant on self-defense; and the evidence is factually insufficient to support the finding that appellant did not act under the influence of sudden passion. We affirm.

# I. BACKGROUND

In the early morning hours of October 14, 2011, Joshua Durrance, Benjamin Vasquez, and Drew Wiese were driving in Vasquez's car looking to buy marijuana. They encountered Chase Laird at a fast-food restaurant, and Durrance asked Laird if he knew anybody from whom Durrance could purchase marijuana. Laird said he knew somebody who would probably make the sale. The parties exchanged telephone numbers and left.

Laird called appellant, who agreed to sell Durrance "an eighth" of marijuana, or 3.5 grams, for $55. Laird then called Durrance, and Durrance's group picked up Laird, who directed them to appellant's house. Vasquez parked his car in front of appellant's house, and Laird walked up to the house to meet appellant. Durrance, Vasquez, and Weise remained in the car.

Before he went outside, appellant tucked a .380-caliber pistol into the waistband of his pants. Laird told appellant that Durrance wanted to weigh the marijuana, so appellant and Laird walked out to the car. Appellant went to the front passenger side of the vehicle where Durrance was sitting and passed Durrance the 3.5 grams of marijuana through the open window.

Durrance weighed the marijuana on a scale he had brought. Durrance asked appellant how much the marijuana cost, and appellant reiterated that it was $55 for 3.5 grams. Durrance then broke apart the marijuana, weighed out 2 grams, and said, "This is 2 grams. Give this to me for $30." At the same time, Durrance handed 1.5 grams of marijuana back to appellant along with $30. Appellant angrily responded "I can't do that" and insisted that Durrance either pay $55 for the full 3.5 grams or return all of the marijuana and keep his money.

There is dispute over the exact exchange that followed, but the jury heard testimony that Durrance replied, "Well, what the fuck are you going to do about it?" and that appellant then asked Durrance, "Are you serious?" and "Are you sure you want it that way?" several times. Appellant and Laird testified that Durrance then said "pistola" ("pistol" in Spanish) to Vasquez and leaned over to reach under the seat. In contrast, Vasquez testified that he never heard Durrance say "pistola," and Wiese testified that Durrance never said anything in the car about a gun or spoke to anybody in the car in Spanish. Moreover, neither appellant nor any other witness testified that they ever saw a handgun, and no handgun was ever recovered other than the handgun used by appellant.

In any event, appellant then undisputedly stepped back from the vehicle, drew his pistol, worked the action to chamber a round, and fired into the open window at close range several times. As appellant ran around the front of the car toward his house, he fired two more times into the windshield.

Durrance was shot four times, and Vasquez was shot once. Vasquez managed to drive the car to a nearby hospital[1] where Durrance was pronounced dead. Vasquez was admitted to the hospital for treatment and survived his single gunshot wound to the chest.

Upon returning to his house, appellant proceeded upstairs to his room and smoked marijuana. Approximately an hour after the shooting, appellant took some Seroquel prescription medication and got into his bed. At no point did appellant wake his mother—who owned the house and was home asleep—or call the police.

---

[1] When the shooting began, Laird ran away from the vehicle and hid behind a neighboring house. Vasquez drove away in the vehicle with Durrance and Weise and left Laird at the scene.

3

Upon learning of the shooting, several police officers assembled around appellant's house to secure the location. The officers maintained a perimeter at the scene for approximately two hours until they were instructed by their commanding officers around 4:15 a.m to attempt contact with someone in the house. The officers knocked on the front door. According to the officers, appellant's mother answered, gave them permission to enter, and directed them to appellant's room.

The police proceeded upstairs to appellant's room, which was locked. The officers knocked on the door, received no response, and kicked in the door. The officers found appellant lying in his bed. In the process of arresting appellant, they found appellant's pistol under his pillow.

The officers took appellant to the police station and conducted a recorded interview, wherein appellant confessed to shooting Durrance multiple times. Appellant was subsequently charged with murder.

Appellant filed a pre-trial motion to suppress certain evidence. A hearing was held on the motion. The trial court denied the motion relative to the firearm found in appellant's bedroom and his confession. After considering the testimony of several witnesses and independently reviewing appellant's videotaped confession, the trial court found:

> I'm going to find that there were exigent circumstances to go into the house, along with the consent of the mom to enter the house to speak with the son where they found him. And I find that they had the right to go into the room and they did have the information to question him.
>
> And I'm going to allow his statement. After reviewing his statement, I find that 38.23 [sic][2] was complied with. And that after reviewing the statement, I also find that [appellant] appeared very

---

[2] We presume the trial court meant article 38.22 of the Texas Code of Criminal Procedure, which pertains to the admissibility of statements made by the accused. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West, Westlaw through 2015 R.S.).

cohesive [sic] and appeared to be awake. He didn't have any problems with responding to any of the officers' questions. He did mention that he had taken Seroquel. And the jury can give that whatever weight they want to, but I do not find that he appeared to be unable to comprehend what was going on or unable to answer any of the questions, and that he did so voluntar[ily] after being advised of his warnings. So, I will allow in the statement that he provided that evening.

After trial, the trial court reiterated its ruling in findings of fact, conclusions of law, and an order regarding the voluntariness of appellant's statement, as follows:

> In light of the totality of the circumstances, including the testimony and arguments proffered by the State and the Defense on the issue of Defendant's intoxication, and this Court's independent assessment of State's Exhibit 1, [the interrogating officer]'s recorded interview with Defendant, this Court concurs with [the interrogating officer] and concludes that if Defendant was still under the influence of the Seroquel that Defendant reported ingesting at 3:00 AM, approximately three hours before the interview, Defendant was not so intoxicated at the time of his statement that he could not understand his *Miranda* and statutory rights; make an independent, informed, and volitional decision to waive his rights; and make a free and voluntary decision to provide a statement to [the interrogating officer].

The trial court allowed admission of the handgun on the ground that it was in plain view when the officers arrested appellant. The trial court granted appellant's motion to suppress as to all other evidence found in appellant's room after appellant was secured, concluding that the police had not obtained a warrant to seize such items and there were no longer any exigent circumstances justifying seizure once appellant was in custody.

A jury found appellant guilty and assessed punishment at 60 years imprisonment.

5

## II. SUFFICIENCY OF THE EVIDENCE

We first address appellant's third and fourth issues, contending that the evidence is insufficient to support his conviction and the jury's finding against appellant on the issue of self-defense.

### A. Standard of review

When reviewing sufficiency of the evidence, we view all evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). We do not sit as the thirteenth juror and may not substitute our judgment for that of the fact finder by re-evaluating weight and credibility of evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's responsibility to fairly resolve conflicts in testimony, weigh the evidence, and draw all reasonable inferences from basic facts to ultimate facts. *Id.* Our duty as the reviewing court is to ensure the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

### B. Sufficiency of the evidence supporting conviction

As charged in the present case, a person commits murder if he "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." Tex. Penal Code Ann. § 19.02(b)(1), (2) (West, Westlaw through 2015 R.S.). The offense is a felony of the first degree. *Id* § 19.02(c) (West, Westlaw through 2015 R.S.).

6

Appellant contends the evidence is insufficient to establish that appellant intentionally and knowingly caused Durrance's death, or that appellant intended to cause serious bodily injury to Durrance and caused his death by intentionally and knowingly committing an act clearly dangerous to human life.

The jury heard testimony that appellant and Durrance were arguing, appellant asked Durrance "Are you sure you want it that way?" three or four times, and appellant then took several steps back, drew his pistol, and started firing. The jury viewed appellant's videotaped statement, in which he admitted that the pistol did not have a round in the chamber and he had to work the action on the pistol to chamber a round before he shot Durrance. The jury also heard testimony that appellant continued to fire into the windshield as he ran around the front of the car.

Viewing the evidence in the light most favorable to the verdict, we conclude any rational fact finder could have found appellant guilty of murder beyond a reasonable doubt under either section 19.02(b)(1) or 19.02(b)(2) of the Penal Code. *See id.* § 19.02(b)(1), (2); *see also Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012) (recognizing that specific intent to kill may be inferred from defendant shooting victim with a deadly weapon); *Forest v. State*, 989 S.W.2d 365, 368 (Tex. Crim. App. 1999) ("[F]iring a gun in the direction of an individual is an act clearly dangerous to human life."); *Womble v. State*, 618 S.W.2d 59, 64 (Tex. Crim. App. 1981) ("[W]here a deadly weapon is fired at close range and death results the law presumes an intent to kill."); *Draper v. State*, 335 S.W.3d 412, 415 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (holding jury was entitled to infer intent to kill from defendant using a deadly weapon—a firearm—at close range to shoot and kill the victim). We overrule appellant's third issue.

7

## C. Sufficiency of evidence that appellant did not act in self-defense

The jury was instructed on the law of self-defense as it applies to a defendant's use of deadly force against another. *See* Tex. Penal Code Ann. §§ 9.31, 9.32 (West, Westlaw through 2015 R.S.). A person is justified in using deadly force against another (1) if he would be justified in using force against the other under section 9.31 of the Texas Penal Code, and (2) when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a)(1), (a)(2)(A). Section 9.31 of the Penal Code identifies certain circumstances when the use of force is not permitted, including that the use of force is not justified in response to verbal provocation alone. *Id.* § 9.31(b)(1).

Once a defendant produces some evidence of self-defense, the burden shifts to the State to disprove the defense. *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). The State is not required to produce evidence to refute the self-defense claim, but rather is only required to prove its case beyond a reasonable doubt. *Id.* Whether a defendant acted in self-defense is an issue of fact to be determined by the jury. *Id.* at 914. A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory. *Id.*

Much of the same evidence that supports the jury's finding that appellant was guilty of murder also supports the finding against appellant on the issue of self-defense. The jury viewed appellant's videotaped statement. In the statement, when asked if appellant was scared or intimidated by Durrance, appellant responded that he was not scared because he had his gun with him, and later reiterated "I'm never scared when I have my pistol on me." Appellant also stated that he did not see that anybody in the car had a gun before he started shooting. Likewise, no witnesses ever saw any weapon in the car. Moreover, witness

8

testimony established—and appellant's statement confirmed—that Durrance never opened his car door or made any motion to get out of the car.

The jury was free to reject—and by its guilty finding, implicitly did reject—the conflicting evidence that Durrance threatened to fight appellant and that Durrance said "pistola" to Vasquez and allegedly then reached under the seat. *See id.* Accordingly, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have rejected appellant's claim of self-defense. We overrule appellant's fourth issue.

### III. MOTION TO SUPPRESS

In his first and second issues, appellant contends that the trial court erred by denying his motion to suppress the firearm used by appellant to commit the murder and appellant's videotaped confession.

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total deference to the trial court's determination of historical facts. *Id.* The trial court is the sole factfinder and judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* Regardless of whether we are reviewing the trial court's express or implied findings, we must view the evidence in the light most favorable to the trial court's ruling to determine whether the evidence supports these findings. *See id.*

Second, we review *de novo* a trial court's application of the law to the facts. *Id.* We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* at 447–48. A trial court does not abuse its discretion by denying a motion to suppress unless that

9

decision lies outside the "zone of reasonable disagreement." *Martinez v. State*, 358 S.W.3d 919, 922 (Tex. Crim. App. 2011).

## A. Admissibility of the firearm

Appellant contends that the trial court erred by admitting appellant's firearm because it was obtained as a result of a warrantless illegal search.

### 1. Searches and seizures pursuant to a valid, warrantless arrest

Article 14.03(a) of the Texas Code of Criminal Procedure provides that a police officer may arrest, without warrant, "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony . . . ." Tex. Code Crim. Proc. Ann. art. 14.03(a)(1) (West, Westlaw through 2015 R.S.). An officer justified in making a warrantless arrest under article 14.03(a)(1) "is justified in adopting all the measures which he might adopt in cases of arrest under warrant, except that an officer making an arrest without a warrant may not enter a residence to make an arrest unless: (1) a person who resides in the residence consents to the entry; or (2) exigent circumstances require that the officer making the arrest enter the residence without the consent of a resident or without a warrant." *Id.* art. 14.05 (West, Westlaw through 2015 R.S.). Accordingly, in order to justify a warrantless arrest inside a person's residence under these statutes, the State must show that the police had probable cause to arrest the suspect, that the residence was a "suspicious place," and that the police either had consent to enter the residence or that exigent circumstances existed justifying the entry. *See id.* art. 14.03(a)(1), 14.05; *see also Banda v. State*, 317 S.W.3d 903, 912 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("For a warrantless arrest to be justified under article 14.03(a)(1), the totality of the circumstances must show (1) the existence of probable cause that the defendant committed a crime and (2) the defendant must be found in a suspicious place.").

10

Moreover, under the Fourth Amendment, police officers may search an arrestee incident to a lawful arrest in order to prevent the arrestee from accessing or using a weapon to assault the officers or to effect an escape. *Chimel v. California*, 395 U.S. 752, 763 (1969); *State v. Granville*, 423 S.W.3d 399, 410 (Tex. Crim. App. 2014). A search incident to arrest must be "substantially contemporaneous" with the arrest and is limited to a search of the arrestee's person and the area within his immediate reach or control. *Chimel*, 395 U.S. at 763; *Granville*, 423 S.W.3d at 410.

### 2. Probable cause

Probable cause for a warrantless arrest exists where, at that moment, the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information would warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

Here, police received 911 calls from appellant's neighbors reporting the shooting outside of appellant's residence, and Vasquez and Wiese gave statements to the police while at the hospital describing the events of the shooting. Reviewing the evidence in the light most favorable to the trial court's ruling, we conclude that probable cause existed for appellant's warrantless arrest.

### 3. "Suspicious place"

Few places, if any, are inherently suspicious. *Dyar v. State*, 125 S.W.3d 460, 464–65 (Tex. Crim. App. 2003). The determination of whether a place is suspicious requires a highly fact-specific analysis. *Id.* at 468. Any place may become a "suspicious place" when an individual at the location and the accompanying circumstances raise a reasonable belief that the individual

11

committed a crime and exigent circumstances call for immediate action or detention by the police. *Swain v. State*, 181 S.W.3d 359, 366 (Tex. Crim. App. 2005); *see also Gallups v. State*, 151 S.W.3d 196, 202 (Tex. Crim. App. 2004) (holding that defendant's home became a "suspicious place" after defendant wrecked his vehicle while intoxicated and walked back to his home); *Goldberg v. State*, 95 S.W.3d 345, 363 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) ("A place can be suspicious because: (1) an eyewitness or police officer connected the place to the crime; (2) a crime occurred there or the police reasonably believed a crime occurred there; (3) specific evidence directly connected the defendant or the place with the crime; or (4) appellant's behavior was a factor in determining whether a place was suspicious.").

In this case, witness statements to the police identified the address as the scene of a crime. Witness statements connected appellant with the address and suggested he retreated into the residence after the shooting. Moreover, upon arriving at the scene, police found two .380 shell casings on the street in front of the house. Reviewing the totality of the circumstances, we conclude that appellant's residence was a "suspicious place" for purposes of article 14.03(a)(1).

### 4. Consent/Exigent circumstances

As stated above, an officer making an arrest without a warrant may not enter a residence to make an arrest unless: (1) a person who resides in the residence consents to the entry; or (2) exigent circumstances require that the officer making the arrest enter the residence without the consent of a resident or without a warrant." Tex. Code Crim. Proc. Ann. art. 14.05. Exigent circumstances that justify a warrantless intrusion by police officers include: (1) providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; (2) protecting police officers from persons whom they reasonably

12

believe to be present, armed, and dangerous; and (3) preventing the destruction of evidence or contraband. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007).

The trial court heard testimony from one of the arresting officers that appellant's mother gave the officers permission to enter the home and speak with appellant. The trial court heard contradictory testimony from appellant's mother that the officers pushed past her to enter the home after she told them she believed appellant was upstairs. Viewing the evidence in the light most favorable to the trial court's ruling, the trial court did not abuse its discretion by determining that appellant's mother—a resident of the home—consented to the police officers' entry to the home.

Moreover, even if the mother had not consented, we would still conclude, as the trial court did, that exigent circumstances existed which justified the officers' entry into the home to arrest appellant. The police believed that appellant had very recently shot and killed Durrance and retreated into his residence—likely with his firearm. Thus, the police could have reasonably believed it necessary to enter the home and secure appellant so as to protect the officers on scene, appellant's neighbors, and anyone else in the home, as well as to prevent appellant from destroying any evidence. *See, e.g., Waddy v. State*, 880 S.W.2d 458, 460 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (noting that "[a]nytime a person has possession of a firearm, the threat to the public safety remains, regardless of whether the possessor has sought shelter or, in other words, won the footrace to the protection of a building."). Accordingly, we conclude that both consent and exigent circumstances justified the officers' entry into appellant's residence and bedroom.

13

### 5. Appellant's firearm was properly seized

As discussed above, we have concluded that the officers had probable cause to enter appellant's home and both consent and exigent circumstances justified their entry. Therefore, the officer's warrantless arrest of appellant was valid. *See* Tex. Code Crim. Proc. Ann. arts. 14.03(a)(1), 14.05. Because the arrest was valid, the officers were justified in searching appellant and the area within his immediate reach or control in order to prevent appellant from accessing or using a weapon to assault the officers or to affect an escape. *See Chimel*, 395 U.S. at 763; *Granville*, 423 S.W.3d at 410.

At the suppression hearing, the trial court heard testimony that when the officers entered appellant's room, appellant was lying on his bed. During the course of taking appellant into custody, one of the officers noticed the pistol "under the pillow right next to [appellant]." Viewing the evidence in the light most favorable to the trial court's findings, we conclude that appellant's handgun was properly seized pursuant to a search incident to a valid warrantless arrest. *See Chimel*, 395 U.S. at 763 ("A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."); *Granville*, 423 S.W.3d at 410.

Accordingly, the trial court did not err by denying appellant's motion to suppress the handgun. *See Valtierra*, 310 S.W.3d at 447–48. We overrule appellant's first issue.

14

## B. Admissibility of appellant's videotaped confession

In his second issue, appellant contends that the trial court erred by admitting appellant's videotaped confession because he was under the influence of "sleep medication" during his interrogation and thus, the statement was involuntary.

### 1. Voluntariness of a statement

Under Article 38.21 of the Texas Code of Criminal Procedure, "A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion[.]" Tex. Code Crim. Proc. Ann. art. 38.21 (West, Westlaw through 2015 R.S.). Whether a statement is voluntarily is a mixed question of law and fact, but because it turns on an evaluation of credibility and demeanor, we afford almost total deference to the trial court's ruling. *Garcia v. State*, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000). The trial court is the "sole and exclusive trier of fact and judge of the credibility of the witnesses," particularly when the voluntariness of a confession is at issue. *Delao v. State*, 231 S.W.3d 235, 238 (Tex. (Tex. Crim. App. 2007). We accord great deferent to the trial court's decision to admit or exclude evidence. *Id.*

The fact that a suspect was on medication at the time of his statement can raise a claim of involuntariness regarding his statement. *Oursbourn v. State*, 259 S.W.3d 159, 172 (Tex. Crim. App. 2008). The effect of a defendant's intoxication on the voluntariness of his statement provides an analogous situation. "[I]ntoxication, while relevant, does not render a confession involuntary *per se*." *Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996); *Gregory v. State*, 56 S.W.3d 164, 175 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd) (same). Instead, the question is whether the defendant's intoxication rendered him incapable of making an independent, informed decision to confess. *Jones*, 944 S.W.2d at 651; *Gregory*, 56 S.W.3d at 175.

15

## 2. Appellant's statement was voluntary

Pursuant to Article 38.22, Section 6, the trial court held a pretrial hearing outside the presence of the jury to assess the voluntariness of appellant's confession. *See* Tex. Code Crim. Proc. Ann. art. 38.22 § 6 (West, Westlaw through 2015 R.S.). At the hearing, appellant argued that his statement was involuntary because he was under the influence of Seroquel, a prescribed sleep medication, which he ingested after the shooting.

The officer who took appellant's statement testified that appellant was "quiet, coherent, alert, and he spoke as a matter of fact." The officer testified that appellant said he had taken some sleeping medication. However, the officer testified that, based on his observation, the medication "was not affecting [appellant's] reasoning because he was very, like I say, clear and alert and he answered the questions that I [asked]." The officer based his conclusion on his experience as a police officer and on having conducted hundreds of interviews with suspects, including some who were under the influence. The officer testified that appellant "did not seem in any way impaired," and he appeared to have the normal use of his mental and physical faculties, and the officer believed appellant's confession was voluntary.

We conclude the evidence supports the trial court's finding that appellant's use of sleep medication did not render his statement involuntary. *See, e.g., Jones,* 944 S.W.2d at 651 (holding that, where appellant's statement to arresting officer that he "was too drunk to understand" was countered by testimony of two officers that appellant did not appear to be intoxicated, the trial court did not err in denying motion to suppress).

Therefore, we hold that the trial court did not err by denying appellant's motion to suppress his confession. We overrule appellant's second issue.

16

## IV. SUDDEN PASSION

In his fifth issue, appellant challenges the factual sufficiency of the evidence supporting the jury's negative finding on the special issue regarding sudden passion.

### A.    Standard of review

At the punishment stage of a murder trial, "the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause." Tex. Penal Code Ann. § 19.02(d) (West, Westlaw through 2015 R.S.). "Sudden passion" means "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2) (West, Westlaw through 2015 R.S.). "Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1) (West, Westlaw through 2015 R.S.). If the defendant proves the issue by a preponderance of the evidence, the offense is reduced to a second degree felony. *Id.* § 19.02(d).

In the factual-sufficiency review of a rejected affirmative defense or similar plea which the defendant must prove by a preponderance of the evidence, we view the entirety of the evidence in a neutral light, but we may not usurp the function of the jury by substituting our judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony. *Matlock v. State*, 392 S.W.3d 662, 671 (Tex. Crim. App. 2013). We consider all the evidence relevant to the issue and determine whether the finding is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *See Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990).

17

The Court of Criminal Appeals and this court have applied this standard in reviewing the factual sufficiency of findings on punishment issues that the defendant must prove by a preponderance of the evidence. *See Neal v. State*, 256 S.W.3d 264, 273 (Tex. Crim. App. 2008) (applying *Meraz* standard in reviewing factual sufficiency of jury's punishment-phase negative finding on special issue of defendant's mental retardation); *Bernard v. State*, 401 S.W.3d 145, 147–50 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (applying *Meraz* standard in reviewing factual sufficiency of jury's punishment-phase finding that defendant did not act under the immediate influence of sudden passion). Accordingly, we will review the evidence under the *Meraz* standard.

**B.    Sufficiency of evidence that appellant did not act under the influence of sudden passion.**

Appellant contends that Durrance's actions provoked appellant to shoot Durrance. Specifically, appellant argues that Durrance initiated the conflict by refusing to pay appellant's asking price for the marijuana once Durrance had it in hand and instead demanding different terms. Appellant contends that Durrance then aggravated the situation by threatening appellant and challenging appellant to fight. Appellant contends that when Durrance allegedly said the word "pistola" and reached under the seat, appellant was unable to coolly reflect upon the situation and acted under the immediate influence of sudden passion when he shot Durrance.

The jury heard testimony supporting appellant's argument, as detailed above, and testimony that when appellant and Durrance were arguing, appellant became mad and started yelling at Durrance. However, the jury also heard evidence contradicting that appellant acted under the influence of sudden passion. The jury heard testimony that Durrance and appellant were arguing over the marijuana deal, but that no threats were made and Durrance never said anything

18

about fighting appellant. The jury viewed appellant's videotaped statement in which he stated that he was not scared. The jury also heard testimony that Durrance never said "pistola," never told appellant that he had a gun or showed appellant a gun, and never moved to exit the vehicle.

The jury is the sole judge of the weight and credibility of the witnesses' testimony on a defensive issue. *Bernard*, 401 S.W.3d at 149. The jury here found that appellant did not prove by a preponderance of the evidence that he caused Durrance's death under the immediate influence of sudden passion arising from an adequate cause. After considering all the evidence relevant to this issue in a neutral light, we cannot conclude that the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. We overrule appellant's fifth issue.

Having rejected all of appellant's issues, we affirm the trial court's judgment.


/s/    John Donovan
       Justice


Panel consists of Justices Christopher, Donovan, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b)

19