Donald Francis BERNARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–10–00044–CR.

Court of Appeals of Texas, Houston (14th Dist.).

April 12, 2011.

Discretionary Review Refused July 27, 2011.

Jerald Kaplan Graber, Houston, for Appellant.

Michelle R. Townsend, Houston, for Appellee.

Panel consists of Justices ANDERSON, FROST, and BROWN.

## OPINION

KEM THOMPSON FROST, Justice.

Appellant Donald Francis Bernard appeals the trial court's judgment and sentence of forty years for murdering his wife. In his only issue, appellant challenges the factual sufficiency of the evidence to support the jury's finding that appellant did not prove that he caused his wife's death under the immediate influence of sudden passion arising from an adequate cause. We conclude that the evidence is factually sufficient. As requested by the State, we modify the trial court's judgment to reflect that appellant pleaded "guilty" to the charged offense, and we affirm the judgment as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

Officers were dispatched to the home appellant shared with his wife of fifteen years, Lucinda Bernard. At the scene, officers discovered Lucinda, who was covered in blood and was lying on the floor of a bathroom. Attempts to resuscitate her failed.

Officers learned from Yvette Barker, a cousin of Lucinda's, that the couple had been having marital troubles. According to Barker, who was in the home at the time of the incident, she saw appellant in the kitchen and heard appellant calmly asking to speak with Lucinda, who responded that she was in the back bathroom. Within five to ten seconds Barker heard a "thump" and Lucinda's screams for help. Barker rushed to the master bedroom and found appellant on top of Lucinda, repeatedly stabbing her with a knife. Barker struggled with appellant, as Lucinda crawled to a bathroom. Barker then fled the home to notify authorities. As she reached the front door, Barker heard appellant kick in the door to the bathroom and Lucinda's screams. Officers also learned that appellant's minor step-daughter saw Barker struggle with appellant. The step-daughter also fled the home.

Officers arrested appellant a few days later. Appellant was charged with the felony offense of murder, to which he entered a "guilty" plea. The trial court instructed the jury to find appellant guilty as charged.

Appellant testified during the punishment phase. He stated that he and Lucinda had been having marital difficulties. Appellant attributed their problems to an extra-marital affair that he claimed Lucinda had with a man named "Smokey." Appellant also stated that he believed Barker was a bad influence on his wife, and that Barker was not welcome in his home. Appellant testified as to what transpired on the day that he murdered his wife. His testimony differed in various respects from the testimony of Barker and appellant's step-daughter, both of whom were in the house when appellant began stabbing his wife.

The punishment-phase jury charge contained a special issue asking whether appellant proved by a preponderance of the evidence that he caused his wife's death

under the immediate influence of sudden passion arising from an adequate cause. The jury found that appellant had not proved it. If the jury instead had found that appellant had proved it, then the offense would have been a second-degree felony. *See* TEX. PENAL CODE ANN. § 19.02(d) (West 2010). Because the jury did not, the offense was a first-degree felony. *See id.* § 19.02(c). The jury assessed appellant's punishment at forty years' confinement using the range of punishment applicable to a first-degree felony.

## ANALYSIS

### Is the evidence factually sufficient to support the jury's sudden-passion finding?

In a single issue, appellant challenges the factual sufficiency of the evidence to support the jury's negative finding on the special issue regarding sudden passion.

A majority of the judges of the Court of Criminal Appeals have determined that "the *Jackson v. Virginia* [443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ] legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State,* 323 S.W.3d 893, 895 (Tex.Crim.App. 2010) (plurality op.) (Hervey, J., joined by Keller, P.J., Keasler, and Cochran, J.J.); *id.* at 913–15 (Cochran, J., concurring, joined by Womack, J.) (same conclusion as plurality). These five judges did not conclude that the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support a jury finding on an issue that the defendant must prove by a preponderance of the evidence. *See id.* at

895; *id.* at 924–26 (Cochran, J., concurring).

In *Meraz v. State,* the Court of Criminal Appeals concluded that, when courts of appeals are called upon to review the factual sufficiency of the evidence on an issue that the defendant must prove by a preponderance of the evidence, the correct standard of review is whether, after considering all the evidence relevant to the issue at hand, the finding is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *See* 785 S.W.2d 146, 155 (Tex.Crim.App. 1990). The Court of Criminal Appeals and this court have applied this standard in reviewing the factual sufficiency of findings during the punishment phase on issues that the defendant must prove by a preponderance of the evidence. *See Neal v. State,* 256 S.W.3d 264, 273 (Tex.Crim. App.2008) (applying *Meraz* standard of review in reviewing factual sufficiency of jury's punishment-phase finding that defendant did not prove by preponderance of the evidence that he is mentally retarded); *Woods v. State,* 301 S.W.3d 327, 331 (Tex. App.-Houston [14th Dist.] 2009, no pet.) (applying *Meraz* standard of review in reviewing factual sufficiency of jury's punishment-phase finding that defendant did not prove by preponderance of the evidence that he voluntarily released the kidnapping victim in a safe place); *Harrell v. State,* 65 S.W.3d 768, 772 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd) (same as *Woods* ). The five judges in *Brooks* did not overrule or disapprove of this part of *Meraz;* in fact, the two concurring judges expressly stated that this part of *Meraz* was correctly decided. *See Brooks,* 323 S.W.3d at 895; *id.* at 924 & n. 67 (Cochran, J., concurring); *Ervin v. State,* 331 S.W.3d 49, 53, n. 2 (Tex.App.-Houston [1st Dist.] 2010, pet. ref'd). Therefore, we will review the evidence under the *Meraz* standard of review.

At the punishment phase of a murder trial, a defendant may raise the issue of whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. *See* Tex. Penal Code Ann. § 19.02(d). "Sudden passion" is defined as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2). "Adequate cause" is defined as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1).

Appellant testified as follows:

- Starting in January 2009, Lucinda began spending more time with her cousin, Barker. Appellant did not think that this was a good time for Lucinda to be spending more time with Barker; he did not think it was "right." Even though he told Lucinda this, Lucinda continued to spend time with Barker.
- In February 2009, appellant began to suspect that Lucinda was having an extramarital affair with a man named "Smokey." Lucinda denied the affair but appellant was not convinced.
- In late February 2009, appellant observed Lucinda and a man he thought was "Smokey" enter a hotel room and spend thirty minutes together. Appellant knocked on the door but nobody answered. He called Lucinda's cell phone but she did not answer. Appellant was hurt, angry, and had a horrible feeling in his stomach.
- Lucinda later called appellant on his cell phone, and they talked. Appellant did not confront the man when he left the hotel room and gave appellant "a nasty stare." Lucinda's cousins drove up in a truck. Lucinda left the room and jumped into the truck. Appellant approached the truck, and Lucinda rolled down her window. Appellant asked her to return a $5,000 check that he had recently given her, and Lucinda returned the check to appellant. Appellant took the check and returned home.
- During this encounter at the hotel in February 2009, there was no kind of altercation, cursing, bad words, or anything like that between appellant and Lucinda.
- On the day of the murder (March 27, 2009), appellant returned home from work at approximately 3:00 p.m., bringing a new pair of "shaving clippers." Appellant and Lucinda were planning to go to a party that night.
- Appellant found Lucinda with Barker, which made him feel hurt and that he was not being respected. While appellant was shaving in his bedroom, Lucinda entered and said Barker would be leaving in a while. Lucinda then left the room.
- Appellant decided that the shaver needed to be adjusted, so he went down to the kitchen to look for a screwdriver. He did not see a screwdriver so he grabbed a knife and returned to the bedroom. Appellant did not make adjustments to the shaver; instead, he sat down on the bed to watch television.
- Lucinda entered the room and asked appellant why he had a knife. Appellant said, "What are you talking about?" Lucinda stated that appellant's step-daughter had said that appellant had a knife. Appellant started thinking that Lucinda was having his step-daughter watch appellant. Appellant then asked, "You have my daughter watching me?" Lucinda re-

plied, "Don't worry about my daughter," and then said, "By the way tonight's cancelled." Appellant then said, "Lucinda, leave me alone," and he heard somebody laugh outside of his bedroom. Then Lucinda "kind of laughed," and appellant jumped off the bed and "swung the knife at her." Appellant does not recall the details of what happened after that. Lucinda ran into the bathroom. Appellant was trying to open the bathroom door when he turned around and saw Barker. Appellant could not say exactly what happened next.

- Appellant remembered stabbing Lucinda three or four times and was shocked to find out that he had actually stabbed her thirteen times. After stabbing Lucinda, appellant cut both of his wrists with the knife he had used to stab his wife. Appellant fled to a wooded area near his home, and cut his wrists again with a piece of broken glass. Appellant also cut his neck with the broken glass and "passed out."

Barker's testimony regarding events was significantly different from appellant's testimony. Barker testified that she was sitting on the stairs in the house examining her new cell phone when she saw appellant go into the kitchen. According to Barker, after speaking briefly to her, appellant passed her and said, "Lucinda, can I talk to you for a minute," to which Lucinda replied, "Yes, I'm in the back bathroom." Five to ten seconds later, Barker heard a thump and then heard Lucinda screaming Barker's name and asking for help. Barker went to the master bedroom and found appellant on top of Lucinda in the bedroom doorway stabbing her. After Barker struggled with appellant, Lucinda was able to crawl into a nearby bathroom. Barker faced appellant with a knife in his hand and begged for her life, and appellant stared at Barker with a blank look. Barker ran away and as she reached the front door she heard the sound of the bathroom door being kicked in and Lucinda yelling Barker's name. Barker ran out the front door of the house to a neighbor's house.

Dr. Jerome Brown, a clinical psychologist who evaluated appellant after the murder, testified that one test indicated that appellant is in the "high average" range for intelligence. Based on another test, Dr. Brown found that appellant was very depressed and showed signs of trauma and turmoil. Dr. Brown also found that appellant is "a typically pretty controlling individual," that he prefers accommodation rather than conflict, that he is able to conform his behavior to the requirements of the social situation in most cases, and that he is not a person who is easily annoyed or impulsive. Dr. Brown stated that appellant is not someone who has problems with anger and that he is easygoing and mild-mannered. According to Dr. Brown, appellant's murdering his wife was "totally out of character for him."

Appellant's testimony regarding the events on the day of the murder conflicted in part with the testimony of Barker and of appellant's step-daughter. The jury is the sole judge of the weight and credibility of the witnesses' testimony. *See Hernandez v. State*, 127 S.W.3d 206, 212 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). Even under appellant's testimony, Lucinda did not verbally or physically threaten appellant, and appellant was apparently upset because (1) Lucinda asked appellant why he had a knife; (2) appellant thought Lucinda was having his step-daughter watch him; (3) Lucinda told appellant not to worry about her daughter; (4) Lucinda decided not to go to a party as they had planned; and (5) Lucinda "kind of laughed." To constitute "sudden pas-

sion," the passion must be directly caused by and arise out of provocation by the person killed or another acting with that person, and the passion must arise at the time of the murder. *See* TEX. PENAL CODE ANN. § 19.02(a)(2). The sudden passion must arise from a cause that commonly would produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. *See id.* § 19.02(a)(1). The jury found that appellant did not prove by a preponderance of the evidence that he caused Lucinda's death under the immediate influence of sudden passion arising from an adequate cause. After considering all the evidence relevant to this issue, we conclude that the jury's finding is not so against the great weight and preponderance of the evidence so as to be manifestly unjust. *See Hernandez*, 127 S.W.3d at 213–14; *Trevino v. State*, 157 S.W.3d 818, 822 (Tex.App.-Fort Worth 2005, no pet.); *Dudley v. State*, 992 S.W.2d 565, 568–69 (Tex.App.-Texarkana 1999, no pet.). Accordingly, we overrule appellant's sole issue on appeal.

**Should the trial court's judgment be modified?**

█ The record reflects that appellant pleaded "guilty" to the charged offense; however, the State notes that the trial court's judgment erroneously reflects that appellant pleaded "not guilty." In his appellate brief, appellant asserts that he pleaded "guilty" to the charged offense. The State requests that this court modify the trial court's judgment to show that appellant pleaded "guilty" to the offense of murder. Finding merit in the State's request, we modify the trial court's judgment to reflect appellant's "guilty" plea to the offense of murder. *See* TEX.R.APP. P. 43.2, 43.6; *French v. State*, 830 S.W.2d 607, 609 (Tex.Crim.App.1992); *Asberry v. State*,

813 S.W.2d 526, 529–30 (Tex.App.-Dallas 1991, pet. ref'd) (en banc).

The trial court's judgment is affirmed as modified.