Opinion filed November 17,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00361-CR

                                                    __________

 

                                 EDWARD
MACK KILE, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 42nd District Court

 

                                                          Coleman
County, Texas

 

                                                       Trial
Court Cause No. 2072

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            The
jury convicted Edward Mack Kile of the offense of murder, made an affirmative
deadly weapon finding, and assessed punishment at confinement for life and a
$10,000 fine.  We affirm.  

            In
his sole issue on appeal, appellant challenges the factual sufficiency of the
evidence with respect to the jury’s rejection of his defense of temporary
insanity.  Insanity is an affirmative defense to criminal responsibility that applies
when it is shown “that, at the time of the conduct charged, the actor, as a
result of severe mental disease or defect, did not know that his conduct was
wrong.”  Tex. Penal Code Ann. §
8.01 (West 2011).  A defendant bears the burden of proving insanity by a
preponderance of the evidence.  Id.  On appeal, an appellate court
reviews a challenge to the factual sufficiency of the evidence with respect to
an affirmative defense by determining “whether after considering all the
evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence so
as to be manifestly unjust.”  Meraz v. State, 785 S.W.2d 146, 155
(Tex. Crim. App. 1990); Lantrip v. State, 336 S.W.3d 343 (Tex.
App.—Texarkana 2011, no pet.); see also Brooks v. State, 323 S.W.3d 893,
924 & n.67 (Tex. Crim. App. 2010) (Cochran, J., concurring).[1] 


            The
record shows that appellant shot James Smith and Sandra Harmes with a .22 rifle.
Smith died, but Harmes survived.  Appellant and Harmes had previously had a
romantic relationship and had lived together for a few years.  They had ceased
living together approximately six weeks prior to this offense but had just
returned from a weekend trip together on the day preceding this offense.  The
record shows that appellant, Harmes, and Smith were all drinking beer at a bar
in Coleman.  Harmes left and went home around 11:30 p.m.  She had told Smith he
could spend the night at her house, which was not far from the bar, rather than
drive home drunk.  Smith arrived at Harmes’s house around midnight.  Shortly
thereafter, appellant began calling Harmes’s cell phone.  She answered it and
told appellant that Smith, who was also a friend of appellant’s, was there.  Appellant
continued to call, but Harmes turned her phone off.

As
Harmes and Smith were sitting in her den on the couch, appellant walked in with
his rifle, almost immediately shot Smith just above his lip, and shortly
thereafter shot Harmes near her jaw.  According to Harmes, who was married to
appellant at the time of trial, appellant’s gun kept jamming or something while
he was trying to fire it.  She recalled appellant saying, “Fire dammit.”  She
also recalled appellant saying, “I’m sorry, James.  I’m sorry, Bug.”  Bug is
Harmes’s dog.  Harmes asked appellant if he was going to kill the dog too, and
appellant replied, “No, I’m not going to kill the dog.”

Appellant
left Harmes’s residence, threw the rifle in a ditch next to a dirt road near
town, and was stopped by police at 1:15 a.m. for driving erratically.  As the
officers were about to place appellant into custody for driving while intoxicated,
they received a priority call from dispatch regarding a shooting.  The officers
let appellant go and went to the scene of the shooting:  Harmes’s residence. 
When they arrived, they found appellant’s cell phone near the fence.  The
officers also observed that all four tires on Smith’s pickup had been slashed.

Harmes
testified that appellant’s actions the night of the shooting were
uncharacteristic for him.  Appellant testified that he did not remember much of
what happened after Smith told him that night while at the bar that Smith was
going to Harmes’s house to have sex with her. Appellant testified that the rest
of the night seemed like “a dream,” like “this is happening and I’m watching
it” but “don’t have any control over what’s going on.”

A
neuropsychologist, Dr. Sam Brinkman, examined appellant prior to trial. Dr. Brinkman
also reviewed documents relating to this case, the investigative statements,
and the taped interviews of appellant and Harmes.  Dr. Brinkman concluded that
appellant was legally sane at the time of the offense and that appellant knew
his conduct was wrong at the time it occurred.  Dr. Brinkman, however, agreed
that temporary insanity “is a possible condition” and that appellant described
a partially dissociative episode, which tends to occur in extreme emotional
circumstances.  According to Dr. Brinkman, this type of dissociation is not a
mental defect.

We
hold that the evidence is sufficient to support the jury’s determination that appellant
failed to prove he was insane at the time of the offense.  In addition to Dr.
Brinkman’s opinion that appellant was sane at the time of the offense, there
was other evidence to support the jury’s finding.  Appellant climbed the fence
and snuck into Harmes’s residence.  Appellant was able to converse with Harmes
and answer her questions during the offense.  Appellant told Harmes that Smith
was dead.  Appellant apologized for his actions, fled the scene, and got rid of
the rifle.  The judgment is not so against the great weight and preponderance
of the evidence as to be manifestly unjust.  Appellant’s sole issue is
overruled.  

            The
judgment of the trial court is affirmed.  

 

 

                                                                                                TERRY
McCALL

November 17,
2011                                                                JUSTICE

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Kalenak, J.









[1]In addition to the court in Lantrip, other
courts of appeals have considered whether Brooks affects the standard of
review to be applied when a defendant challenges the factual sufficiency of the
evidence with respect to an affirmative defense and have concluded that it does
not and that the Meraz standard of review is still appropriate.  See
Moncivais v. State, No. 01-09-01131-CR, 2011 WL 2936360, at *4 (Tex.
App.—Houston [1st Dist.] July 21, 2011, pet. filed); Bernard v. State,
No. 14-10-00044-CR, 2011 WL 1375570, at *2 (Tex. App.—Houston [14th Dist.] Apr.
12, 2011, pet. ref’d); Smith v. State, No. 01-09-00634-CR, 2011 WL
1233367, at *8 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, pet. ref’d); Johnson
v. State, No. 05-09-00133-CR, 2010 WL 5142392 (Tex. App.—Dallas Dec. 20,
2010, pet. ref’d) (not designated for publication); see also Godin v. State,
No. 04-10-00784-CR, 2011 WL 4828484, at *3 (Tex. App.—San Antonio Oct. 12,
2011, no pet. h.) (mem. op., not designated for publication).