**AFFIRMED as modified; Opinion Filed January 6, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00761-CR

### DAVID LEE MORALES, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F15-56719-I**

## MEMORANDUM OPINION
Before Justices Myers, Schenck, and Carlyle[1]
Opinion by Justice Carlyle

Following appellant David Lee Morales's open plea of nolo contendere to aggravated assault with a deadly weapon, the trial court heard punishment evidence and sentenced him to twelve years' imprisonment. In his sole issue on appeal, Mr. Morales contends his trial counsel provided ineffective assistance regarding punishment because trial counsel "did not investigate or present evidence of [Mr. Morales's] many mental health issues" or "address [Mr. Morales's] clear and evident habit of self-medication with alcohol, marijuana, and cocaine."

---

[1] Justice Carlyle has substituted on the submission panel and has reviewed the briefs and record in this case.

The State asserts in a cross-issue that the trial court's written judgment erroneously shows a "guilty" plea and therefore should be modified to reflect the correct plea. We affirm the trial court's judgment as modified in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

**Background**

During the punishment hearing, Mr. Morales testified he was diagnosed with ADHD at age six. From that time, he was "consistently on some medication or other" until he chose to stop taking medication at age fifteen. In early 2015, at age twenty-one, he decided to "try seeing a doctor again" because his mental health "was in absolute shambles." The doctor diagnosed him with bipolar disorder and "moderate to severe anxiety" and recommended "trying different medications to see what fit me best," including "[a]ntidepressants, antipsychotics, antiseizures, [and] mood stabilizers."

In August 2015, Mr. Morales had recently begun dating Mary, a 41-year-old woman he worked with. He stated that relationship began "right before I got my medications properly stabilized and also while I was still doing a lot of drinking and drugs," and "[t]he road for me getting cleaned up was long and difficult and for a while it didn't really click that the drugs were making the medication not work properly." At the time he started dating Mary, she was living temporarily in an apartment with her adult son, Christian George, and his girlfriend, Karalee Goodson.

On August 5, 2015, Mr. Morales overslept and was late for work because he "had been up with some friends" the night before and "had drank too much, smoked some weed, did a little coke, and I went to bed around three." His employer fired him that day and he returned home. He stated he took the prescribed medication he was on at that time, which was "making me very paranoid" and "giving me like mild auditory hallucinations." At lunch time, he drank a beer and "smoked a little weed." He testified his recollection of what happened after that "fails me to a degree." He

stated, "I remember a lot of things but they don't—they're like pieces to a puzzle that's not all there, they don't fit properly." He can recall "the front door to Chris and Kara's apartment" and "that scream." Several hours later, as he was leaving his home for a job interview, police pulled him over and "started jumping out of SUVs and pointing guns in my face." He testified "that's when things started to make sense and I started to become aware that I must have done something." He was arrested and charged with shooting Ms. Goodson.

After being released on bond, Mr. Morales broke up with Mary and completed drug and alcohol treatment. He also continued "working with my doctors to develop a very well-defined medication regimen to keep me stable." He stated he "was able to fully get away from drugs and alcohol as a crutch." He is now on medication that works well for him and has stable employment. He began dating a different woman in 2016 and has been married for a year.

Ms. Goodson testified that on the date of the shooting, she was alone in her apartment at around noon and heard someone trying to open the door. The person began kicking at the door and she "started to panic." She looked through the peephole and recognized Mr. Morales, who had been at the apartment several times before with Mary. He had a bandana covering the lower half of his face. She opened the door and screamed, "What the F are you doing?" He raised a gun to her face. She grabbed his hand and struggled to angle the gun away from her and push Mr. Morales out the door. He pulled the trigger, shooting her in the abdomen. She let go of him and he immediately ran off. She began yelling for help and called 911. As a result of the shooting, she required several major surgeries and was in severe pain for months. She was told at the hospital that "if I had shown up five minutes later I would not have made it, I would have died."

Ms. Goodson stated that within a month before the shooting, Mary and Mr. George had an argument regarding Mary's car, which she kept parked in the apartment's parking lot. According to Ms. Goodson, the car "was no longer functioning so we unfortunately had to report it to

management so that we would not get in trouble, and management immediately had it towed." After the towing, Mary moved out of the apartment and sent Mr. George a Facebook message "sounding really, really angry and threatening him." At the time of the shooting, Mary was living with Mr. Morales.

Dr. Michael Pittman testified he is a medical doctor specializing in forensic psychiatry. The trial court appointed him to examine Mr. Morales after the shooting. Dr. Pittman concluded Mr. Morales suffers from "bipolar I disorder" and was sane at the time of his alleged offense. Dr. Pittman stated (1) he believes "[Mr. Morales's] drug ingestion had more to do with his criminal actions on August 5th, 2015 than the fact that he was off of his medication or didn't have properly calculated medication" and (2) Mr. Morales's treatment records show he told hospital staff "he didn't recall the events and that he had shot someone accidentally while drinking and taking new meds," but he told another healthcare provider that "he had been off his medicine" at the time of the shooting.

Veronica Morales, Mr. Morales's mother, testified that at the time of these events, he was living in an apartment attached to her house. In February 2015, he told her "I think I need to get back on meds." According to Ms. Morales, "in April of 2015, when they had diagnosed him with bipolar, they were changing his meds like every other week." She stated "that's when I noticed that he was acting quite erratic" and "seemed quite psychotic, actually."

**Ineffective assistance of counsel**

To prevail on an ineffective assistance of counsel claim, an appellant must show by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and (2) the deficient performance prejudiced the defense—that is, but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687

–4–

(1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and, therefore, the appellant must overcome the presumption that the challenged action constituted "sound trial strategy." *Id*. at 689; *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). Our review is highly deferential to counsel and we do not engage in retrospective speculation. *See Lopez*, 343 S.W.3d at 142; *Bone v. State*, 77 S.W.3d 828, 833, 835 (Tex. Crim. App. 2002). To prevail, the appellant must provide an appellate record that affirmatively demonstrates counsel's performance was not based on sound strategy. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *see also Lair v. State*, 265 S.W.3d 580, 594 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) ("The decision whether to present witnesses is largely a matter of trial strategy.").

In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Mallett*, 65 S.W.3d at 63. Because the reasonableness of trial counsel's choices often involves facts that do not appear in the appellate record, trial counsel should ordinarily be given an opportunity to explain his actions before a court reviews the record and concludes counsel was ineffective. *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003); *Bone*, 77 S.W.3d at 836. "If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013) (quoting *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012)); *see Lopez*, 343 S.W.3d at 142 (stating that when direct evidence regarding counsel's conduct is not available, we will assume counsel had a strategy if any reasonably sound strategic motivation can be imagined).

One necessary facet of professional assistance is the investigation of the facts and law applicable to a case. *Ex parte LaHood*, 401 S.W.3d 45, 50 (Tex. Crim. App. 2013). Counsel has a duty in every case to make a reasonable investigation or a reasonable decision that an investigation is unnecessary. *Strickland*, 466 U.S. at 691; *see Ex parte Imoudu*, 284 S.W.3d 866, 870 (Tex. Crim. App. 2009).

In his issue, Mr. Morales contends (1) "despite being given reams of medical records" by his family, his trial counsel "did not investigate [his] mental health problems" or "set forth the evidence that the family and Appellant had dutifully provided to him"; (2) because trial counsel "had not investigated Morales's mental health," he "was unprepared to properly address and contextualize the behavior that resulted in the Appellant's behavior"; (3) "the repeated alteration of the Appellant's medicines by various medical providers, and the subsequent synergistic effects that such experimentation had on him, was not at all addressed by the defense"; and (4) "[b]ecause Morales's guilt was never in question, the failure to explain the continuing effects of Morales's condition to the [trial court] was both deficient and prejudicial."[2]

To support his position, Mr. Morales relies primarily on two cases regarding trial counsel's failure to investigate or produce mitigation evidence: *Porter v. McCollum*, 558 U.S. 30, 39 (2009) (per curiam), and *Shanklin v. State*, 190 S.W.3d 154, 162–66 (Tex. App.—Houston [1st Dist.] 2005), *pet. dism'd, improvidently granted*, 211 S.W.3d 315 (Tex. Crim. App. 2007). In both of those cases, evidence was presented post-trial to support the appellant's claims. *See Porter*, 558 U.S. at 33 (trial court conducted two-day evidentiary hearing on defendant's petition for postconviction relief during which Porter presented extensive mitigating evidence); *Shanklin*, 190

---

[2] Mr. Morales also states in his issue that because the trial court "had no perspective" as to Mr. Morales's mental health, it "could not properly rule on whether the Defendant had knowingly and intelligently entered into the open plea." Mr. Morales's appellate brief does not otherwise mention or address his plea's validity, and his prayer requests only a "new punishment hearing." To the extent the plea's validity is complained of on appeal, that complaint presents nothing for this court's review. *See* TEX. R. APP. P. 38.1(i).

S.W.3d at 158 (trial court conducted motion for new trial hearing by affidavits). By contrast, Mr. Morales did not raise the issue of ineffective assistance of counsel in his motion for new trial and the record here is silent regarding trial counsel's reasons for his actions. We do not find *Porter* and *Shanklin* instructive.

At the punishment hearing, trial counsel questioned Mr. Morales and other witnesses about Mr. Morales's past mental health and substance abuse issues and thus was clearly aware of those matters. The fact that appellate counsel would have represented Mr. Morales in a different manner does not render trial counsel ineffective. *See Lopez*, 343 S.W.3d at 142–43. Nothing in the record rebuts the presumption of a sound trial strategy focused on Mr. Morales's progress in overcoming his mental health and substance abuse challenges instead of on his undisputed choices to use illegal drugs in addition to or instead of prescribed medications. *See id.*

Mr. Morales has also failed to show that, but for the alleged deficiency, there is a reasonable probability the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687. He contends trial counsel's performance was prejudicial "because most of the punishment phase concerned Morales' actions on the date of the offense, which occurred during the time that Morales and his family reported the Appellant's severe debilitating depression, anxiety, and bipolar disorder and during the exact time that the Defendant had been subjected to overlapping and perhaps contradictory medications." The testimony showed that at the time of these events, Mr. Morales was suffering from mental health disorders, had been prescribed medication he believed affected him negatively, and combined or replaced that medication with illegal drugs. The punishment range for the offense was two to twenty years' imprisonment. Despite Ms. Goodson's testimony regarding Mr. Morales's violent acts and her severe injuries and suffering, the trial court imposed a mid-range sentence of twelve years' imprisonment. On this record, we cannot conclude Mr. Morales has made the required showing of prejudice. *See Morrow v. State*, 486 S.W.3d 139,

152–53 (Tex. App.—Texarkana 2016, pet. ref'd) (concluding appellant did not show his defense was prejudiced by counsel's failure to investigate mitigating mental health history evidence where appellant's crime—breaking into home and threatening inhabitants with death—was violent in nature and trial court assessed relatively "lenient" sentence of 20 years' imprisonment).

Because Mr. Morales has not satisfied either *Strickland* prong, we decide his issue against him. *See Strickland*, 466 U.S. at 687.

**The State's cross-issue**

Although the trial court's written judgment states Mr. Morales pleaded "guilty," his plea agreement and the reporter's record show he pleaded "nolo contendere." An appellate court may modify a trial court's written judgment if the record contains the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd); *Bernard v. State*, 401 S.W.3d 145, 150 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (modifying judgment to reflect correct plea to charged offense). We decide the State's cross-issue in its favor and modify the judgment to state Mr. Morales entered a plea of "nolo contendere" instead of "guilty." *See Asberry*, 813 S.W.2d at 529–30; *Bernard*, 401 S.W.3d at 150.

We affirm the trial court's judgment as modified.

> /Cory L. Carlyle/
> CORY L. CARLYLE
> JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
180761F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID LEE MORALES, Appellant

No. 05-18-00761-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F15-56719-I.
Opinion delivered by Justice Carlyle.
Justices Myers and Schenck participating.

Based on the Court's opinion of this date, we **MODIFY** the trial court's judgment to state appellant David Lee Morales entered a plea of "nolo contendere" instead of "guilty."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 6th day of January, 2020.