**Affirmed in Part and Reversed and Remanded in Part and Memorandum Opinion filed January 25, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00821-CR

---

### ANTHONY AUTHORLEE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1597720**

---

### MEMORANDUM OPINION

Appellant Anthony Authorlee appeals his conviction for murder. In two issues appellant contends (1) the evidence is factually sufficient to support a finding of the affirmative defense of sudden passion; and (2) the court costs associated with the judgment were improperly calculated. Concluding that the evidence was sufficient to support the trial court's rejection of appellant's sudden passion defense, and the court costs were improperly assessed, we affirm the judgment of conviction and

assessment of punishment, reverse a portion of the assessment of court costs, and remand for proceedings consistent with this opinion.

<h1 style="text-align:center">BACKGROUND</h1>

Appellant entered an open plea of guilty to the offense of murder. The trial court deferred a finding of guilt to permit preparation of a presentence investigation report (PSI), which was prepared and admitted as an exhibit at appellant's sentencing hearing.

According to the PSI appellant entered the Houston Police Department's Northeast Command Station and told the officers working the front desk, "I need an attorney, I just shot and killed my wife." In the meantime other officers had been dispatched to The Medallion Assisted Living facility in response to "a person down." This person was later identified as appellant's wife, the complainant, and was transported to a hospital where she was pronounced dead. Appellant told an officer that he was angry with his wife because she began living in an apartment with the couple's adult son. Appellant spoke with his wife about 1:00 a.m. on the morning of July 12, 2018, when appellant's wife told him, "she needed some space and time to think." Appellant reported becoming depressed and considering suicide. Later the same morning appellant drove to the assisted living facility where his wife worked and reported that he "freaked out." Appellant shot his wife with a shotgun and drove home before he surrendered to officers at the police station. Appellant reported that he waited in the parking lot until his wife arrived at work. After appellant shot his wife, he threw the shotgun in a bayou or ditch. At that time appellant asserted the shooting was an accident.

Surveillance video from the assisted living facility revealed that appellant waited in the parking lot approximately one hour before he shot his wife. The complainant was shot within four minutes of arriving at the facility. A family friend

was interviewed and told officers that appellant had threatened to kill the complainant and her son a week earlier. The friend also reported that the complainant was afraid of appellant because he had been abusive in the past.

Intellectual testing revealed that appellant had an IQ of 67, which was considered in the intellectual disability range. A clinician assessed appellant and diagnosed severe depression, anxiety, post-traumatic stress disorder, and mild intellectual disability.

At the sentencing hearing, Sergeant Matthew Brady of the Houston Police Department testified that he spoke with appellant on the day of the offense. Brady read *Miranda* warnings to appellant and appellant invoked his right to an attorney. Brady discontinued the interview and started to leave the room when appellant asked how his wife was doing. Brady told appellant his wife had died. Appellant told Brady that, within a week or two of the shooting, his son had been "out of control threatening to kill him." As a result of this threat appellant and his wife moved their son out of their home into a motel and eventually an apartment. Appellant's wife stayed with their son in the apartment. Appellant expressed frustration with his wife because he believed she "was picking his son over him."

Brady testified that on the day of the offense appellant spoke with his wife at around 1:00 in the morning and did not speak to her again before driving to her place of employment. Appellant arrived at his wife's workplace about one hour before she arrived and waited for her. When appellant's wife arrived at work, appellant retrieved a gun from the back of his pickup truck where it was concealed in a plastic bag. Video evidence indicated that from the time appellant's wife arrived to the time he drove away after shooting her, approximately four minutes elapsed. Brady testified, "it looked like it was a premeditated situation."

Appellant told Brady he knew his wife worked from 7 a.m. to 7 p.m. and he

3

drove to her work to talk. When appellant saw his wife, he "freaked out" and shot her three times. Appellant told Brady that he threw the gun into a ditch or bayou after leaving the scene.

The trial court found appellant did not meet his burden with respect to sudden passion, and sentenced appellant to 31 years in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

ANALYSIS

In two issues appellant challenges the trial court's finding that he did not meet his burden on sudden passion and the assessment of court costs.

## I.    Standard of Review and Applicable Law

At the punishment stage of a murder trial, "the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause." Tex. Penal Code § 19.02(d). If the defendant proves the issue in the affirmative by a preponderance of the evidence, the murder offense is reduced from a first-degree felony to a second-degree felony. *Id*. § 19.02(d).

"'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id*. § 19.02(a)(1). "'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *Id*. § 19.02(a)(2). To be entitled to an affirmative finding on the issue of sudden passion, the defendant must demonstrate that there was an adequate cause or provocation; "that a passion or an emotion such as fear, terror, anger, rage, or resentment existed;" "that the homicide occurred while the passion still existed and before there was reasonable opportunity

4

for the passion to cool; and that there was a causal connection between the provocation, the passion, and the homicide." *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005). Fear or anger alone is insufficient to establish sudden passion unless "the cause of the fear could produce fear that rises to a level of terror which makes a person of ordinary temper incapable of cool reflection." *De Leon v. State*, 373 S.W.3d 644, 650 (Tex. App.—San Antonio 2012, pet. ref'd). "[A] defendant may not rely on a cause of his own making to support a claim of sudden passion." *Id.*

When the defendant raises a factual sufficiency challenge to an adverse finding on sudden passion, we apply a factual sufficiency standard of review and determine whether the finding was against the great weight and preponderance of the evidence. *Matlock v. State*, 392 S.W.3d 662, 667 n. 14, 671 (Tex. Crim. App. 2013); *See Bernard v. State*, 401 S.W.3d 145, 147 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (holding standard applies to factual sufficiency review of finding on claim of sudden passion). We review all the evidence in a neutral light, and we may not usurp the factfinder's function of assessing the weight and credibility of the witnesses' testimony by substituting our judgment for the factfinder's. *Matlock*, 392 S.W.3d at 671. We may sustain the challenge only if the evidence contrary to the finding greatly outweighs the evidence supporting it and the finding "is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Id.*

## II.   The evidence was factually sufficient to support the trial court's negative finding on the sudden passion issue.

Appellant did not testify at the sentencing hearing, but was examined by a clinical psychologist for the PSI report. Appellant reported the following to the examining psychologist:

- Appellant spoke with his wife at 1:00 a.m. then went to her workplace to talk with her, and "snapped" or "freaked out."

- Appellant had a gun because he always kept it in his truck.

- Appellant left his home early in the morning and sat in the parking lot waiting for his wife to arrive.

- When appellant confronted his wife, he asked if she was leaving him. Appellant's wife said she was not leaving appellant, and "Before you knew it, I pulled the trigger."

- Appellant did not know why he pulled the trigger; he "snapped."

- Appellant did not go to his wife's workplace to intentionally kill her.

Brady's testimony at the sentencing hearing did not significantly differ from appellant's description to the psychologist. Appellant spoke with his wife at 1:00 in the morning, drove to her workplace about five hours later, waited in the parking lot for her to arrive and shot her. The record reflects that appellant's wife, the complainant, did not verbally or physically threaten appellant at the time of the murder. Appellant was upset after a 1:00 phone call and thought his wife was planning to leave him. Appellant waited several hours after the phone call to drive to his wife's workplace and waited another hour in the parking lot to confront her. When appellant confronted his wife, she told him she did not plan to leave the marriage.

To constitute "sudden passion," the passion must be directly caused by and arise out of provocation by the person killed or another acting with that person, and the passion must arise at the time of the murder. *See* Tex. Penal Code § 19.02(a)(2). The sudden passion must arise from a cause that commonly would produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. *See id*. § 19.02(a)(1). The trial court found that appellant did not prove by a preponderance of the evidence that he caused

6

his wife's death under the immediate influence of sudden passion arising from an adequate cause. After considering all the evidence relevant to this issue, we conclude that the trial court's finding is not so against the great weight and preponderance of the evidence so as to be manifestly unjust. *See Bernard v. State*, 401 S.W.3d 145, 149–50 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). We overrule appellant's first issue.[1]

## III. The trial court erred in assessing a Local Consolidated Court Cost.

In appellant's second issue he asserts the trial court erred in assessing court costs not authorized by statute. Specifically, appellant contends that the trial court erroneously assessed $105 in "Consolidated Court Costs–Local."

The Local Consolidated Fee on Conviction of Felony only applies to defendants who are convicted of offenses committed on or after January 1, 2020. Tex. Loc. Gov't Code § 134.101. Section 134.101 assesses an additional $105 fee for persons convicted of felonies. *Id*. § 134.101(a). That $105 fee is to be allocated to the following specific accounts and funds: the clerk of the court account, the county records management and preservation fund, the county jury fund, the courthouse security fund, the county and district court technology fund, and the county specialty court account. *Id*. § 134.101(b).

It is undisputed that appellant committed this offense on July 12, 2018, which was prior to the legislative change to section 134.101. The State concedes the trial court erred in assessing the Local Consolidated Court Cost Fee because the statute does not authorize consolidated costs for offenses committed before January 1, 2020.

---

[1] Appellant argues that the trial court and this court should adopt a "common-law" definition of sudden passion under the Model Penal Code. As an intermediate appellate court we are bound to follow precedent issued by the Texas Court of Criminal Appeals in this matter. *See Ex parte Robles*, 612 S.W.3d 142, 149 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

The bill of costs in the record assesses the Local Consolidated Court Cost Fee, but does not assess fees enumerated in section 134.101, i.e., the clerk of the court account, the county records management and preservation fund, the county jury fund, the courthouse security fund, the county and district court technology fund, and the county specialty court account.

Because the record does not reflect the court costs that should have been assessed under previous legislation, we sustain appellant's second issue, reverse that portion of the court's judgment that improperly assessed the Local Consolidated Court Cost Fee of $105, and remand to the trial court for proper calculation of court costs.

In a single sentence at the end of the argument section for appellant's second issue, appellant contends that he "requests this court remand for an ability to pay inquiry or for the recalculation of the appropriate costs."

Article 42.15(a-1) of the Code of Criminal Procedure requires that "during or immediately after imposing a sentence in a case" the trial court "shall inquire on the record whether the defendant has sufficient resources or income to immediately pay all or part of the fine and costs." Tex. Code Crim. Proc. art. 42.15(a-1). The recitals in the judgment of conviction reflect that the trial court ordered appellant to pay court costs "after having conducted an inquiry into Defendant's ability to pay."

Recitals contained in a judgment create a presumption of regularity and truthfulness, absent an affirmative showing to the contrary. *Breazeale v. State*, 683 S.W.2d 446, 450–51 (Tex. Crim. App. 1985). The burden is on the defendant to overcome this presumption. *Ex parte Wilson*, 716 S.W.2d 953, 956 (Tex. Crim. App. 1986). Appellant does not point to any evidence contradicting the judgment recitals and therefore has not overcome the presumption of regularity. *See Breazeale*, 683 S.W.2d at 451 (instructing that presumption of judgment's regularity and

8

truthfulness "is never to be lightly set aside"); *see also Wiggins v. State*, 622 S.W.3d 556, 561 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd). We overrule this part of appellant's second issue.

## CONCLUSION

We affirm the judgment of conviction and sentence. We reverse the portion of the judgment that assessed $105 in Local Consolidated Court Costs and remand to the trial court for recalculation of court costs.

/s/    Jerry Zimmerer
Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.
Do Not Publish — Tex. R. App. P. 47.2(b).

9